## Case No. 7,630.

### In re KEAN et al.

[2 Hughes, 322:[1] 8 N. B. R. 367; 2 South. Law Rev. 725; 2 Am. Law Rec. 230.]

District Court, W. D. Virginia. 1873.

BANKRUPTCY — CONSTITUTIONALITY OF BANKRUPT AMENDMENT—APPLICATION FOR HOMESTEAD —TIME FOR FILING PETITION.

1. Amendment of March 3d, 1873, to bankrupt act [17 Stat. 577], considered, and *held* constitutional in cases where petition is filed after passage of act; and in such cases wherein the petition is filed *before* passage of the amendment to the act, where. after the passage of the amendment to the act, there remains in the hands of the court an unappropriated fund.

[Cited in Re Smith. Case No. 12,986. Overruled in Re Dillard, Id. 3,912. Cited in Re Jordan. Id. 7,515; Darling v. Berry, 13 Fed. 670.]

[Cited in Wooster v. Bullock, 52 Vt. 51.]

2. The application for the exemption allowed by the bankrupt act [of 1867 (14 Stat. 517)] can only be made by bankrupt previous to obtaining his discharge.

[See, contra, In re Deckert, Case No. 3,728.]

[In the matter of W. W. Kean, Jere White, and others, bankrupts.]

Thomas S. Flournoy and Charles Dabney, for claimants.

E. E. Boulden, James M. Whittle, and W. W. Henry, for creditors.

RIVES, District Judge. These cases have been presented and heard together by way of raising for decision a variety of questions upon claims of homestead. These questions arise under the late amendatory act of 3d March, 1873; and, so far as they are undecided by me, relate to the application of the relief thereby granted in cases pending at the passage of the act. The question of the unconstitutionality of this act was decided by me at my spring term, in Lynchburg, upon very full and able argument; but I have been willing to reopen the subject and review my opinions at the instance of this bar. for whose ability I have so much respect, and from whose researches I am accustomed to derive so much assistance. To dispose of these numerous cases, under the different phases they wear. we must seek to settle some general principles to serve as clues to lead us through this labyrinth. This labor we might be saved at the threshold of the inquiry, if, indeed, it be true, as contended for by the counsel opposing these claims, that this relief is unconstitutional because it divests rights of property without just compensation, and without due process of law, contrary to the fifth amendment of the United States constitution. I do not contest that there is a vested right in judgment liens, which cannot be invaded under this provision of the constitution, unless an express authority be found for it in another part of that instrument, all parts of which must be

construed and stand together. But the express authority is given, in the power of congress to pass a uniform bankrupt law. The scope of this power came directly under review of the supreme court in the Legal Tender Cases, 12 Wall. [79 U. S.] 457. The dissenting justices in that case, while invoking in their behalf the fifth amendment of the constitution, and denying to congress the right to impair contracts, yet conceded to congress the power to avoid the one and accomplish the other, in the passage of a bankrupt act. Chief Justice Chase says: "It is true that the constitution grants authority to pass a bankrupt law; but our inference is that in this way only can congress discharge the obligation of contracts. It may provide for ascertaining the inability of debtors to perform their contracts, and upon the surrender of their property may provide for their discharge." Justice Field, who also dissented, said, pointedly: "The only express authority for any legislation affecting the obligation of contracts is found in the power to establish a uniform system of bankruptcy, the direct object of which is to release insolvent debtors from their contracts, upon the surrender of their property." Without, therefore, resorting to the doctrines of the majority of the court, I consider it as a concession, in these cases, that congress has the power in enacting a system of bankruptcy, to infringe vested rights and impair the obligation of contracts. But it is argued that the late case of Gunn v. Barry [15 Wall. (82 U. S.) 610] is an authority against this view. It is, however, upon a different question, namely, the power of a state, by constitutional provision, to divest the lien of a judgment, and is, I am glad to find, a conclusive authority in support of the decision of our court of appeals upon the eleventh article of our state constitution. But it does not touch. in the remotest degree, the power of congress to disturb vested rights or impair the obligation of contracts so far as the same may result from the due exercise of its express power to establish a uniform system of bankruptcy. I can only express my surprise that the bar or the press should quote this decision as at all pertinent to the consideration of the provisions of a bankrupt law enacted by congress in pursuance of an express power. It is of the essence of a bankrupt law to give exemptions and grant a discharge. Neither can be done without invading vested rights and destroying the obligation of contracts; both have the same effect and not one more than the other; the objection applies with equal force to the exemption and the discharge, and if waived, as waived it must be. to the discharge, it cannot be urged, as has been in argument here, as having greater force against the effect of the exemption.

The objection to the act of 3d March, 1873, for want of uniformity. is far more plausible and difficult. As the law stood before this

enactment, it gave the state exemptions in force in the year 1871. Objection was made to that on account of the diversity of these state exemption laws; but that objection may be considered as overruled by the circuit court of Missouri, in the Case of Beckerford [Case No. 1,209], in which Justice Miller and the district judge united in pronouncing the opinion of the court against the validity of this objection. This decision has been generally acquiesced in, and I have never heard any authority quoted against it. But while the propriety of recognizing state exemptions, however variant in the different states, as proper to be allowed by congress in its bankrupt system upon the same principle that these exemptions are respected and saved in the final process of execution from the United States courts, is urged that this act of 3d March, 1873, goes beyond the state exemption eo nomine, removes restrictions therefrom, and in this way purports to amend the state constitutions and laws. We have seen that the power to exempt and discharge is plenary, and has no limitation but the discretion of congress. It cannot alter the state exemption for state purposes; this would be, indeed, as urged, to alter state laws; but I do not see why congress may not in its discretion, to effect certain objects in its bankrupt system, relieve these state exemptions of restrictions deemed hostile to the spirit, principles, and aims of that system. If it does so it is a separate exercise of congressional power, adding uniformly in all the states to the exemptions made by them, and is an act defensible upon this theory of the unlimited power of congress in the enactment of a bankrupt law over exemptions, whether given directly as an act of congress, or indirectly as a recognized and adopted act of the state. This act, therefore, in unfettering the state exemptions of certain restrictions, and enlarging their operation, is in its nature mixed, and partakes of a state exemption in one aspect, and in the other of a congressional enlargement thereof. If, in the first aspect, it has been judicially sustained, as we have already seen, as meeting the requirements of the constitution in point of uniformity, I do not see how, in the other aspect, it can be assailed as lacking this essential attribute of uniformity. The congressional enlargement applies equally to all the states, and gives a uniform rule whereby to administer these state exemptions, not in state courts, but in courts of bankruptcy created by congress to carry out their system of bankruptcy. I do not esteem it necessary to elaborate this view. I content myself with the brief statement of the reasoning which conducted me to the conclusion that the act of last March was not obnoxious to this constitutional objection, however plausible and difficult of solution it seemed at first. But if the case had been stronger against the law, it would scarcely become me, in my inferior position in the federal judiciary, to show such want of proper deference for a high coördinate department as to pronounce their act a violation of the constitution. This I might be constrained to do if my convictions of its unconstitutionality were clear and settled, and in such a case I should not shrink from the duty to do so. But I am inclined to believe that those who may not yield to my reasoning will at least agree that it is a case of doubt which should always be resolved in favor of the legislature. I must, therefore, accept this act as binding on this court, and to be construed and administered so as to effectuate and advance the relief it was designed to give. To construe and apply it, it is well to consider the origin of this measure. It is a history not devoid of certain notable and curious interest that will repay us for a cursory detail of the circumstances out of which it arose. These circumstances are familiar to the bar of this state, but probably unknown elsewhere. The limitation in the original act to "state exemption laws in force in the year 1864" cut off the homestead provision of our constitution, whether taken to be operative from its adoption at the polls in July, 1869, or its acknowledgment by congress in the readmission of the state to representation in its halls in January, 1870. Whether this effect was produced in other states I am not prepared to say; but it was Virginia that first moved, through its representatives, and led to the act of June 8th, 1872, substituting the year 1871 for the year 1864. This, therefore, embraced the homestead of Virginia. But the question arose, judicially, what was that homestead? It fell to the lot of this court, at this place (In re Wylie [Case No. 18,109]) to give the first decision under this amendment of June 8th, 1872. It will be recollected that the court was constrained to take the homestead as expounded by the court of appeals of this state, and to hold it invalid and void as to debts antecedent to the time when the constitution took effect. The point was immediately carried up for supervision to the circuit judge, who did not decide it; and recently it has been abandoned with the consent of Judge Bond, and the cases in which it arose are now to be considered here as affected by the act of last March.

In this state of facts recourse was had for relief against this decision to congress for a new law. The power of congress to relieve the homestead of this restriction, and the bankrupt law of this distinction in debts because of their dates, so destructive of the equality it establishes between all demands on the general assets of the bankrupt, was acknowledged in the opinion of the court in the decision of these cases. Hence the object of the legislation asked, was primarily to relieve the homestead of this leading restriction, arising from the inability of the state constitution to impair the obligation of contracts, which could not ·be affirmed of congress in the express grant to it of the power

to establish a uniform system of bankruptcy, which, we have seen, necessarily involved the dissolution of contracts. But, it seems, in the progress of affairs a secondary blow was directed at section three of article eleven of the constitution, which, by the phrase "other security thereon," was held by this court to embrace liens of judgments or executions thereby made paramount to the claim of homestead. This recital enables us to account for the remarkable and irregular character of this late act. So far as it undertakes to declare "the true intent and meaning of the act of June," I suppose it to be without a precedent, save in the ancient parliaments of England, when it became necessary to declare what was the common or unwritten law of the realm. I have not seen, nor have I been referred to any similar declaratory act of congress. But I am indebted to the industrious researches of Mr. Bouldin, of counsel for the creditors, for an instance of such a declaratory act in New York, which came under review in the case of People v. Board of Sup'rs of City & Co. of New York, 16 N. Y. 425; and in which it was held that it was ineffectual in regard to the interpretation of prior acts, "because the legislature had no judicial authority, and could not control the courts in respect to the construction of statutes in cases arising before the declaratory statute." If this declaration of the act was designed to persuade the court of a different interpretation, it could not override the clear words of the statute, or impose upon the court a meaning at war with the true extent of homestead and the express subordination of homestead to judgment liens in the constitution itself; if designed to reprove the court for an alleged misconstruction of law, it escaped challenge and examination, and is without just authority, and, in either aspect, wholly nugatory and inoperative. Hence, I feel warranted to discard from this act its mere "declarations," and to look only to its enactments. It has these clear terms of enactment, namely: "That the exemptions allowed the bankrupt by the said amendatory act shall be the amount allowed by the constitution and laws of each state respectively, as existing in the year 1871, and that such exemptions be valid against debts contracted before the adoption of such state constitution and laws, as well as those contracted after the same; and against liens by judgments or decrees of any state court, any decision of any such court rendered since the adoption and passage of such constitution and law to the contrary' notwithstanding." The addition to the law, as it stood amended on June 8th, 1872, consists in this provision, that "these exemptions be valid against debts contracted before the adoption of such state constitution and laws, and against liens by judgment or decree of any state court in spite of any decision of any such state court, rendered since the adoption of such constitution and passage of such laws."

If we put together these several amendments and read them as one law, it will conduce to a clearer understanding of these separate provisions. The exemption, therefore, in the fifth clause of the first proviso of the fourteenth section of the original act should now read as follows: "And such other property not included in the foregoing exemptions as is exempted from levy and sale upon execution or other process or order of any court by the laws of the state in which the bankrupt has his domicil at the time of the commencement of the proceedings in bankruptcy, to an amount not exceeding that allowed by such state exemption laws in force in the year 1871; and that these exemptions shall be the amount allowed by the constitution and laws of each state respectively, as existing in the year 1871, and that such exemptions be valid against debts contracted before the adoption of such state constitution and laws as well as those contracted after the same, and against liens by judgment or decree of any state court, any decision of any such court rendered since the adoption and passage of such constitution and laws to the contrary notwithstanding." This presentation of these several amendments in one body seems to me to show conclusively that this grant is emphatically of a state exemption, freed by congress of certain enumerated restrictions, and to be administered by the court in strict conformity with the constitution and laws creating it. It is by no means confined to the grant of a specific amount, as has been urged in argument; but it confines the state homestead to that amount, and we must look to the state constitution and laws to regulate and limit it. This is most conducive to the ends designed, most beneficial to the parties to be relieved, and most expedient on grounds of public policy. Hence, I have concluded to carry out the provisions of the homestead according the constitution and the homestead acts where they do not conflict with it. But it is argued that these acts of the assembly abridge the homestead in the limitations they impose upon the estate of the claimant, but I am satisfied those limitations fairly set out and represent the homestead which the head of a family is entitled by the constitution "to hold for the benefit of himself and his family." In this matter, therefore, I feel free to follow, in the settlement of the homestead when claimed, the eighth section of the act approved June 27th, 1870. Sess. Acts 1869–70, 201. Where, however, the homestead act shall be deemed by me, in the absence of any decision on the subject by the supreme court of appeals of the state, to be in conflict with the constitution, I shall, of course, aim to pursue the higher guide of the constitution, and cheerfully conform to the sentence of the court of appeals when rendered.

But it is an embarrassing question to decide how and when to apply this statute in pending cases, and when the relief should be denied. The general principles of jurisprudence

demand that a law, though remedial, should speak for the future, and should have no retroactive effect, unless its terms should plainly require it. There is no pretence that this particular statute is otherwise than prospective in its character. It cannot, therefore, in its application, be allowed to change or disturb vested rights, but the relief it gives can only be dispensed, in pending cases, where no such effects follow. In the case of U. S. v. The Peggy, 1 Cranch [5 U. S.] 103, even in the appellate court, a judgment, though rightful when rendered, was set aside to conform to later and existing laws; but it was insisted "that in mere private cases between individuals, the court will and ought to struggle hard against a construction which will, by retrospective operation, affect the rights of parties." I concede the principle, therefore, that I can only give effect to this bounty of congress, in pending cases, where it will not change the vested rights of parties, and then only in furtherance of the remedy, and in cure of the mischief which gave rise to the statute. Kent, Comm. 455; Potter's Dwar. St. 163. The mischief had been, in Virginia, that the bankrupt could not get his exemption against debts contracted before the constitution went into operation; nor take it against liens of judgments and decrees. The act of March 3d, 1873, was designed to cure this evil. But in what cases did it cure it? Certainly in all cases commenced after the date of the act, but in none, it is argued, commenced one day before that date. Hence results the injurious anomaly that in two proceedings, one begun in last February, and the other on 4th of March last, where in point of fact the rights of parties and the subjects of litigation were alike at the disposal and under the control of the court, the former would be denied and the latter allowed his homestead. Cruel and discordant as the practice would be upon such an arbitrary test, it is claimed that it follows from a fundamental principle of the bankrupt law in section fourteen, which makes the assignment relate back to the commencement of proceedings in bankruptcy, and vests the title, by operation of law, to all the bankrupt's property and estate, real and personal, in the assignee, subject to the exceptions thereafter specified. But observe, that exempted articles are expressly saved from the vesting by virtue of said deed of assignment. But to remove all doubt upon the subject it is expressly provided "that the foregoing exception shall operate as a limitation upon the conveyance of the property of the bankrupt to his assignees. And in no case shall the property hereby excepted pass to the assignees. or the title of the bankrupt thereto be impaired or affected by any of the provisions of this act." What is this but to declare by law that these exemptions. present or future. whenever allowable without disturbing rights of parties, shall be taken as limitations upon the deed of assignment; and to interdict the use of any provision of this act, including the title of the assignee, to impair or affect the bankrupt's rights of exemption? So far, then, as these exemptions can be allowed in pending cases by the property or fund being in the custody or under the control of the court, they are guarded with peculiar sanctity and cannot be defeated by the title of the assignee. That title—that claim of vested right—must, under all circumstances and in every stage of the proceeding, yield to this paramount claim of exemption. This fourteenth section must be taken and construed as a whole, and all its parts made to consist one with the other. If so, it follows with irresistible force that there can be at no time any vesting of title in the assignee so as to defeat these exemptions. This view of the act, therefore, removes out of our way this narrow, and inconvenient, and injurious rule of construction which assumes the passage of the act as the date to determine the validity or invalidity of claims of homestead. I am happy to be able to invoke the language of the law against this harsh, inflexible. and unreasonable rule. I prefer the more liberal rule, which requires me to dispense this bounty of congress, wherever I can do it without incurring the blame of interfering with the absolute vested rights of parties. I cannot think congress intended to exclude from the numberless cases already pending, at the passing of this law, this measure of relief where no considerations of vested rights could be alleged against it, nor the means denied to the court of satisfying the meritorious demand. In the following out this principle of determination, I have had cases of this sort arising out of the proceedings of state courts upon creditors' bills for the sale of realty. Before, or contemporaneously with proceedings in bankruptcy, the lands of the bankrupt have been sold, the sale confirmed, and the funds distributed; but because some of the bonds for the deferred payments were outstanding and uncollected, I have been asked for the allowance of homestead out of the proceeds of sale. I refuse it. It would be to grant the bankrupt a homestead, not out of his own property, but out of the effects of others. Again. after the bankrupt is adjudicated, his lands are about to be sold under decree of a state court, and he applies to me for a restraining order, under the allegation he is entitled to a homestead out of the lands, I feel constrained to grant it. He has no other tribunal that can give him this relief. He is civiliter mortuus, and all proceedings against him in the state courts must stop, unless the assignee is authorized to intervene and proceed with them. But if there is no allegation of facts to establish a claim of homestead, or otherwise to give jurisdiction on other rightful grounds, the stay is denied and the parties left to legitimate their further proceedings by making the assignee a party, with his consent and the consent of this court. I have thought it proper to state this. my practice in vacation, by way of illustrating

the principle I have assumed for my guidance.

I now proceed to the consideration of the special questions raised by the causes in my hands. Of these, the chief is whether a discharged bankrupt can be readmitted to petition for, and to be allowed an additional exemption granted after his discharge. Proceedings in bankruptcy are strictly statutory proceedings. They are said to present a congeries of suits in the multitudes of issues they raise between the bankrupt and his various creditors. The application for a discharge is one of these suits. In it there are separate pleadings and distinct issues. It is the final object of the bankrupt, and hence the act and the forms devised by the supreme court to carry it into effect furnish the mode and many precautions for the formal trial, if need be, by a jury, of the bankrupt's right to a discharge. When opposed it becomes a lis contestata of great interest to the parties, and when obtained a great boon to the bankrupt. It procures a release from his debts, with certain exceptions, and can be pleaded as a full and complete bar against all suits brought on such debts, whereupon his certificate shall be conclusive evidence of the fact and regularity of the discharge. Before he asks for his discharge he has received his exemptions. Upon what terms, therefore, is he to be understood as leaving the court? Upon the abandonment of his assets to the administration of the court with no other claim, save to any surplus beyond the satisfaction of his debts. He departs from the jurisdiction of the court with the single condition that any creditor, etc., may, within two years, contest the validity of his discharge on the single ground of fraud. I do not perceive, therefore, how he can acquire a locus standi in this court to ask for an exemption not existing at the time of his discharge. For these reasons I am of opinion that the petitions of W. W. Kean, discharged 17th September, 1869, of Wm. Rison, discharged 16th September, 1869, of Decatur Jones, discharged 29th November, 1869, and of A. G. Lewis, discharged 23d March, 1870, should be dismissed, at their respective costs. Where the bankrupt is yet before the court, in cases commenced before the last act, his claim to homestead depends upon the existence of an unappropriated fund, out of which it can be satisfied without the infringement of rights vested in others by decree or otherwise. It is not necessary that the property should remain in specie. A mere sale, unaccompanied with a pledge of the proceeds, prior to the passage of the act, will not defeat this provision, especially in this case where the claimant, waiving his allotment in kind, elects to take it out of the proceeds of sale. In cases instituted after June 8th, 1872, the right is clear to the homestead as against debts contracted after the constitution went into operation, and in those brought after March 3d, 1873, it is relieved of this restriction, and is moreover good against the liens of judgments

and decrees. The grant in such cases follows as a matter of course upon following the steps I have prescribed. In the spirit of the constitution and the law, I accord to the claimant the selection of homestead; his assignee has nothing to do with it; when made, I require his assignee to report to me whether it be excessive or not in value, that report to lie in the clerk's office for thirty days for exceptions, and if there be none, to stand confirmed unless good cause be shown to the contrary. But if the assignee should report the allotment excessive, or express any doubt about it, or if any creditor should desire it, I shall proceed by way of appraisement as directed by the homestead law of the state. Should the claimant select money or personal property for his homestead, he will be expected to indicate the mode in which it shall be preserved or invested for the use of himself or family, as a homestead provision, subject to the limitations of the state law. In this way, I think, this act may be carried into effect with great advantage to our impoverished families, and without other injury to creditors than what is incident to bankrupt laws. I am informed, our exemptions are by no means as great as those of many other states.

I need not especially apply the doctrines I have stated, and the test I have chosen, to the various other cases in my hands, but leave counsel to do so in their respective cases, and submit to me their drafts of decrees in conformity with this opinion. Should there be doubt in any case as to what category it falls under, it may be reserved for argument and decision upon its special circumstances. But I presume I shall be so understood by counsel as to enable them to agree upon their decrees, and the steps they may take for the revision of my judgment, and the correction of the errors into which I may have fallen. I am sensible of the novelty and difficulty of some of these questions, and of the importance of their being settled in a higher court. I shall, therefore, be gratified if counsel shall invoke the decision of the circuit court upon these points.