## In re MORAN.

(District Court. W. D. Virginia. December 28, 1900.)

1. BANKRUPTCY — TITLE TO PROPERTY — HOMESTEAD EXEMPTION UNDER VIR-GINIA STATUTE.

Const. Va. art. 11, § 1, relating to homestead exemptions, provides that every householder or head of a family "shall be entitled * * * to hold exempt from levy," etc., property, real or personal, not exceeding in value $2,000. *Held*, that such provision merely gives the debtor a privilege of exemption, and does not create an absolute exemption of any particular property, which will prevent the title to such property from vesting in the debtor's trustee in bankruptcy, under Bankr. Act 1898, § 70a, where the exemption is not claimed in his schedules.

2. SAME—WAIVER OF EXEMPTION IN NOTE—LIEN.

Under Code Va. 1887. § 3647, which provides that a debtor may waive the benefit of his homestead exemption, and that, where he declares such

waiver in an obligation, property which he would be entitled to hold as exempt under the law may be subjected to the payment of such obligation under legal process, a note in which the debtor waives his right of exemption creates no lien on any property which is preserved by Bankr. Act 1898, § 67d.

**8. SAME—CLAIM OF EXEMPTION—RIGHT TO AMEND SCHEDULES.**

A bankrupt should be permitted to amend his schedules, at any time before the distribution of his estate, to assert a further claim to exemptions allowed him by the laws of the state, where such claim is made in good faith and for the benefit of his family; but he will not be permitted to amend and assert such claim, after title to the property has vested in his trustee, where its purpose is, and its only effect will be, to give a preference to those of his creditors who hold notes in which he has waived his right of exemption.

In Bankruptcy. On question certified by referee.

Micajah Woods and George Perkins, for bankrupt.
D. Harmon and Wilson & Manson, for creditors.

PAUL, District Judge. In this matter the referee certifies to the judge of this court the question of the right of the bankrupt to amend his schedules so as to enlarge the exemptions beyond those claimed in the schedules made in pursuance of an order of adjudication in involuntary bankruptcy. On the 24th day of November, 1899, the said W. G. Moran executed a deed of trust on certain property, wherein he made one J. D. Smith, to whom he owed $900, a preferred creditor. On the 3d day of February, 1900, he executed another deed of trust, in which he gave a preference to the People's National Bank of Charlottesville, Va., for a debt of $400 due from said Moran to said bank. On the ground that these preferences had been given to the creditors named, a number of other creditors filed a petition, praying that said Moran be adjudged an involuntary bankrupt. An order adjudicating the said W. G. Moran an involuntary bankrupt was entered March 16, 1900. In compliance with the requirements of section 7, subsec. 8, of the bankrupt law, the bankrupt, within 10 days, the time prescribed, made out and filed a schedule of his property, a list of his creditors, and a claim under the homestead exemption law of Virginia of certain articles designated in detail, with the value of each, the whole amounting to the sum of $60.

The constitution of the state of Virginia (section 1, art. 11, Code 1887) provides that "every householder or head of a family shall be entitled * * * to hold exempt from levy, seizure, garnisheeing or sale under any execution, order or other process * * * his real or personal property, or either, including money and debts due him, * * * to the value not exceeding two thousand dollars. * * *" Section 3647 of the Code of Virginia 1887 provides that the debtor may waive the benefit of the homestead exemption given by section 1, art. 11, of the state constitution. The statute says:

"If any person shall declare in a bond, bill, note or other instrument * * * that he waives, as to such obligation, the exemption from liability of the property * * * which he may be entitled to claim and hold exempt, * * * the said property shall be liable to be subjected for said obligation, under legal process, in like manner and to the same extent as other property or estate of such person."

On the 8th of April, 1900, at the first meeting of creditors, the bankrupt notified the referee of his intention "to claim his homestead exemption to the extent of $2,000 out of the property involved in the bankrupt proceeding, such exemption to be paid in money from the proceeds of such portion of said property as said Moran is entitled to have exempt under the law, whether such proceeds be from sales or collections." At the first meeting of creditors the hearing of the application for leave to amend the schedules in bankruptcy, enlarging the claim of homestead, was continued to May 8, 1900, at which time the petitioning creditors filed exceptions to the petition of the bankrupt for leave to amend his schedules. The substance of these exceptions is—First, that the bankrupt having claimed in his original schedule an exemption, under the homestead law of Virginia, of certain articles of the value of $60, the title to the additional property which he sought to have set apart under the homestead exemption had vested in the trustee, and the bankrupt, having no title thereto, could not claim a homestead exemption therein, and that the schedule of the bankrupt was a waiver or abandonment of any further claim of homestead; second, that the claim of homestead exemption is not pretended to be made for the benefit of the householder and his family, but as a means of giving a preference to the waiver of homestead creditors, including the People's National Bank, the attempted preference of which was an act of bankruptcy, because it is obvious that all of the assets, including the property claimed as exempt, will have to go to pay the debts.

The referee refused to allow the schedule claiming a homestead exemption to be amended, and the bankrupt filed his petition for an appeal to the judge of this court.

The same attorney who prepared the schedules of the bankrupt, under the order adjudicating him an involuntary bankrupt, in which articles of the value of $60 are claimed under the homestead exemption of Virginia, which allows a householder or head of a family a homestead exemption of $2,000, prepared the petition for an additional allowance under the homestead exemption. No statement is made in the petition for an amendment of the schedule for additional claim of homestead as to the cause of error, or of mistake, inadvertence, or want of full information as to his rights, when the bankrupt filed his schedule in which he claimed articles of the value of $60. Order 11, General Orders in Bankruptcy (32 C. C. A. xiv., 89 Fed. vii.); Loveland, Bankr. 140, 141. The reason for this failure of the bankrupt to allege error or mistake on his part, in not claiming more than $60 in his original schedule under the homestead exemption law, will plainly appear in the further examination of the case. The right of the bankrupt to amend his schedules, where he shows an honest purpose to claim the benefit of the homestead exemption for the benefit of himself or of his family, cannot be seriously questioned. This amendment can be made at any time before his discharge, or, at least, before the distribution of the fund arising from a sale of the property surrendered. Loveland, Bankr. 342. In re Kean, 2 Hughes, 322, Fed. Cas. No. 7,630. But this must be a real, a substantial, claim to property that can be set apart under

the provisions of the homestead law, and which the bankrupt, as a householder or head of a family, is entitled to hold exempt from levy, seizure, or sale, under any execution, order, or other process. It must appear to the bankrupt court that the property claimed by the bankrupt as a homestead exemption, for the benefit of himself or his family, is such that it can be set aside for this purpose. It is not claimed by the bankrupt in this case that there is a dollar's worth of the property surrendered by him that can be set apart and vested in him as a homestead exemption or as any part of such exemption. The record shows that the homestead waiver debts proved by creditors are largely in excess of the property surrendered, and that there is nothing out of which a homestead exemption can be assigned. This fact explains the failure of the bankrupt, in his petition for additional claim of homestead, to state the cause of error in his original schedule, in which he claimed, under the homestead exemption, certain articles of the value of $60. The real object of the bankrupt in filing his additional claim of homestead exemption is shown in his petition for review of the decision of the referee. His purpose is to give to creditors holding notes waiving the homestead exemption a preference to those whose debts are not evidenced by waiver notes. He abandons the idea that the homestead he claims is for the benefit of himself or of his family. He insists that the homestead waiver notes he has given to certain creditors constitute liens on the property which he in his petition claims as a homestead exemption. The homestead waiver notes held by creditors of a bankrupt do not constitute liens on the property surrendered by him. The only superiority they have over creditors holding nonwaiver claims is that, where the bankrupt is entitled to claim property under the homestead exemption laws, he cannot hold the same against the debts as to which he has waived the benefit of his homestead exemption. No decision construing the statute (section 3647, Code Va. 1887), allowing a debtor to waive the benefit of his homestead exemption, holds that such waiver creates a lien on the property a debtor may claim for his homestead. The creditor having a waiver note has no hold or claim upon the property of the debtor as a security for the debt. 13 Enc. Pl. & Prac. 123. When a debtor gives a waiver note to his creditor as between himself and such creditor, he incumbers his right to claim the benefit of a homestead exemption. In re Solomon, 2 Hughes, 164, Fed. Cas. No. 13,166. This is as far as the effect of a waiver note on the right of a debtor to claim a homestead exemption has ever been carried by any court in Virginia, state or federal.

It is not, as contended by counsel for the bankrupt, such a lien as that preserved under section 67, cl. "d," Bankr. Act 1898. Likewise erroneous is the contention that the title to the property claimed as a homestead did not vest in the trustee on the adjudication of bankruptcy. This assumption is based on section 6a and on section 70a of the bankrupt act of 1898:

"Sec. 6. Exemptions of Bankrupts. (a) This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they

have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

"Sec. 70. Title to Property. (a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt."

This court in Re Sisler, 2 Am. Bankr. R. 760, 96 Fed. 402, construed sections 6a and 70a in their application to property claimed by a bankrupt in Virginia as a homestead, and it cannot more clearly state its views in this case than by repeating what it said in that:

"It is insisted that by these provisions of the bankrupt act no title to the property claimed by the bankrupt to be exempt under the Virginia homestead law passes to the trustee. That the title to property exempt by state laws does not pass to the trustee in bankruptcy cannot be questioned. Similar provisions to those just quoted from the bankrupt act of 1898 are found in the bankrupt law of 1867. Yet it was held in Re Solomon, supra, that, where there was a waiver of the homestead exemption, the property claimed to be exempt as a homestead did pass to the assignee. The error in the argument which insists that the title to the property claimed by the bankrupt as a homestead does not pass to the trustee lies in the fact that such property is not, by the constitution and laws of Virginia, absolutely exempt from the payment of debts. The argument of counsel for the bankrupt applies to such specific property as is exempt under section 3650, Code Va., on which any deed of trust, mortgage, or other writing or pledge made by a householder to give a lien on such property is void as to such property. Section 3655, Id. The distinction between the character of exemption of property given by section 3650 and that of the homestead exemption allowed by the constitution is very clearly stated by the court of appeals of Virginia in Reed v. Bank, 29 Grat. 719. Christian, J., delivering the opinion of the court, says: 'The privilege given by the constitution is a personal privilege, to be exercised by him or not, as he may choose. The constitution does not declare, as does the poor debtors' law, that certain property "shall be exempt" from levy, etc., but that the householder or head of a family shall be entitled to hold property, to be selected by him, to the value of $2,000. In the former case the law executes itself. It is a part of the public policy of the government to exempt that particular property absolutely from forced sale, and its provisions cannot be waived. But there is no such constitutional declaration that property to the amount of $2,000 "shall be exempt." On the contrary, the very language used plainly shows that it may be exempt only when the privilege given to the householder or head of a family has been exercised, and the property selected and set apart by him.'"

In Linkenhoker's Heirs v. Detrick, 81 Va. 44, the court followed the decision in Reed v. Bank; and in Re Solomon, supra, Waite, C. J., drew the same distinction.

The position taken by counsel for the bankrupt, that in claiming a homestead exemption, where no benefit can result to him or his family, he is simply trying to uphold a contract, and if he did otherwise he would be depriving some creditors of vested rights, and placing others where they ought not to stand, is without merit. It is no part of the bankrupt's duty to aid some of his creditors in securing the payment of their debts, to the exclusion of others equally meritorious. The duty of the bankrupt, if he is entitled to a homestead exemption, is to claim it for the benefit of himself or of his family. The policy of the law in making provision for a homestead exemption is to provide shelter, food, and raiment for the family

when it is overtaken by the calamity of an indebtedness that cannot be liquidated without depriving the family of its home and the necessaries of life. The doctrine is thus stated in Wap. Homest. 4:

"The conservation of family homes is the purpose of homestead legislation. The policy of the state is to foster family homes as the factors of society, and thus promote the general good. To save them from disintegration, and secure their permanency, the legislator seeks to protect their homes from forced sales, so far as it can be done without injustice to others."

In Shipe v. Repass, 28 Grat. 716, Judge Staples says:

"But no one can look into the provision of our constitution and the adjudicated cases of other states and fail to see that the primary object is to provide for the family. As was said by the supreme court of Ohio in Sears v. Hanks, 14 Ohio St. 298: 'The humane policy of the homestead act seeks not the protection of the debtor, but its object is to protect his family from the inhumanity which would deprive its dependent members of a home; and, in aid of this wise and humane policy, the whole act should receive as liberal a construction as can be fairly given to it. We think its provisions protect the debtor's family as against his creditor in the actual enjoyment of a homestead, irrespective of the title or tenure by which it is held.' See Smyth, Homest. § 532. In the constitution and laws of all the states, and in the decisions of all the courts, the idea is kept prominently in view that the great purpose of the homestead exemption is not merely the benefit of the husband or parent, but the maintenance and security of the family against the imprudence, mismanagement, and neglect of the former."

It being the purpose of the homestead law to provide an exemption for the benefit of the insolvent debtor and his family, the bankrupt will not be permitted, under the guise of claiming a homestead exemption, to so pervert the law as to secure a preference to one or any number of his creditors. A court of bankruptcy will not lend its sanction to a scheme so palpably unjust, and that so flagrantly violates the primary object of the bankrupt act, which is that equality shall obtain in the administration of a bankrupt's estate, and that his creditors shall share pro rata in its distribution. To permit the bankrupt, under the color of claiming a homestead, to enable one class of his creditors—those holding homestead waiver notes—to collect their debts, to the exclusion of creditors holding nonwaiver claims, would practically annul the order adjudicating him an involuntary bankrupt. It would enable him, in great part, to carry into effect the preferences he aimed to give some of his creditors when he executed the deeds of trust of November 24, 1899, and of February 3, 1900. The creditors of this estate, unless they are lienholders, will share ratably in its distribution.

For the reasons stated, the holding of the referee is sustained.