In re WOODRUFF (two cases). In re McCORVEY. In re COWDREY.

(District Court, S. D. Georgia, W. D. August 4, 1899.)

**1. BANKRUPTCY—WAIVER OF EXEMPTIONS—JURISDICTION OVER EXEMPT PROPERTY.**

A court of bankruptcy, by virtue of the powers conferred upon it by Bankruptcy Act 1898, c. 2, § 2, and particularly the grant of authority to "determine all claims of bankrupts to their exemptions," has jurisdiction to protect and enforce, against property set apart to the bankrupt as exempt under the laws of the state, the rights of creditors who hold his notes or other like obligations containing a written waiver of the exemption, but who have not reduced their claims to judgment, nor otherwise established a specific lien on such property.

**2. SAME—RIGHTS OF CREDITORS.**

On the petition of creditors who hold notes or other obligations of the bankrupt containing a written waiver of exemptions, but who have not obtained judgments, nor otherwise established liens on the property, the court of bankruptcy will direct the trustee to administer the property set apart to the bankrupt as his homestead exemption, the same as other property of the estate, but keeping a separate account of the proceeds. Such proceeds will constitute a special fund for distribution to those creditors who hold waivers of exemptions, and they will be required to exhaust this fund before coming upon the general estate. The bankrupt, or any one in his behalf, may redeem the homestead by paying the claims of such creditors.

**3. SAME—STAY OF DISCHARGE.**

A bankrupt's application for discharge may be stayed until there has been a definite settlement of the rights of creditors who claim the privilege of enforcing their claims against property which has been set apart to the bankrupt as his homestead.

In Bankruptcy. On petitions of certain creditors of Eli Woodruff, Z. B. Woodruff, H. J. McCorvey, and W. D. Cowdrey, bankrupts, praying for a stay of proceedings on the applications of the said bankrupts, respectively, for discharge, and for other relief.

Hall & Wimberly, Greer & Felton, and Ansley & Ansley, for petitioning creditors.

Allen Fort, for bankrupts.

SPEER, District Judge. These are plenary proceedings in equity brought by certain creditors of the bankrupts above mentioned. They are all alike. The petitioners hold promissory notes given by the bankrupts containing waivers of the right to the homestead and exemption allowed by the laws of the state of Georgia. These waivers constitute a part of the contract of indebtedness, and were made in accordance with the provisions of the constitution of the state empowering the debtor to waive or renounce in writing his right to the benefit of the exemption therein provided. Petitioners allege that the trustees of the estates of the bankrupts have set apart the ex-

.emptions under the provisions of the act of congress, and have reported the items and estimated value thereof to the court; the bankrupts themselves have applied for a discharge; the petitioners hold no security for their debts, except in so far as the waiver of homestead and exemption may be construed as a security; and that, if a discharge is granted by the court at this time without making some provision for the enforcement of the waiver notes, the petitioners will be without remedy. This is made to appear by a recitation of the law of Georgia (Code, § 2850). This provides how the exemption can be subjected to the payment of the debt containing a waiver of homestead. It is by putting the debt in judgment, and causing execution issued thereon to be levied on the exempted property. The bills allege that, the entire estates of the bankrupts not consumed in expenses having been set apart by the trustees as exemptions, if the discharge in bankruptcy shall now be granted by the court, without reserving to the petitioning creditors the right to sue on said debts and put the same in judgment, or without giving judgments creating liens thereon, the petitioners will be left without the means of enforcing their rights created by the waivers of exemption. The prayers are that the bankrupts' applications for discharge be stayed and not granted until the petitioners are given an opportunity to enforce their waivers of homestead either by proceedings in the state court or in this court, or that, in the event discharges shall be granted, the same be so molded as to save to the petitioners their right to reach the exemptions set apart to the bankrupts, and that in the meantime the court will protect and preserve the exempted property, and provide for its due administration, distribution, etc. The defendants, who are the bankrupts, demurred to the petition for want of jurisdic·tion, and argument was heard thereon.

The question presented by the pleadings and argument in these causes is of first importance. It affects the vast preponderance of the written promises to pay which have been made in this state since the adoption of the constitution in 1877. It is this: Has the bankruptcy court jurisdiction to protect or enforce against the bankrupt's exemption the rights of creditors not having a judgment or other lien, whose promissory notes or other like obligations to pay contain a written waiver of the homestead and exemption authorized and prescribed by the constitution of the state, or are such creditors to be remitted to the state courts for such relief as may be there obtained?

The constitution of the state provides (article 9, § 1):

"There shall be exempt from levy and sale, by virtue of any process whatever under the laws of this state, except as hereinafter excepted, of the property of every head of a family, or guardian or trustee of a family of minor children, or every aged or infirm person, or person having the care and support of dependent females of any age, who is not the head of a family, realty or personalty, or both, to the value in the aggregate of sixteen hundred dollars."

Code, § 5914, provides:

"The debtor shall have power to waive or renounce in writing his right to the benefit of the exemption provided for in this article except as to wearing apparel, and not exceeding three hundred dollars' worth of household and kitchen furniture, and provisions, to be selected by himself and his wife, if any, and he shall not, after it is set apart, alienate or encumber the property

so exempted, but it may be sold by the debtor and his wife, if any, jointly, with the sanction of the judge of the superior court of the county where the debtor resides or the land is situated, the proceeds to be reinvested upon the same uses."

The statutory remedy for the enforcement of simple promises to pay, containing a waiver of the homestead, is found in section 2850 of the Code, which is as follows:

"In all cases when any defendant in execution has applied for, and had set apart a homestead of realty and personalty, or either, or where the same has been applied for and set apart out of his property, as provided for by the constitution and laws of this state, and the plaintiff in execution is seeking to proceed with the same, and there is no property except the homestead on which to levy, upon the ground that his debt falls within some one of the classes for which the homestead is bound under the constitution, it shall and may be lawful for such plaintiff, his agent or attorney, to make affidavit before any officer authorized to administer oaths, that, to the best of his knowledge and belief, the debt upon which such execution is founded is one from which the homestead is not exempt, and it shall be the duty of the officer in whose hands the execution and affidavit are placed to proceed at once to levy and sell, as though the property had never been set apart. The defendant in such execution may, if he desires to do so, deny the truth of the plaintiff's affidavit by filing with the levying officer a counter affidavit."

The constitution now of force, which contains the provisions above quoted, was adopted in 1877. This constitution was substituted for that of 1868, which made provision for a much larger homestead exemption, namely, $2,000 in land and $1,000 in personalty. The constitution of 1868 was adopted shortly after the late Civil War, when the dire necessities of the people resulting therefrom had caused a popular demand for large measures of relief to debtors. It was soon found, however, that the policy of allowing a homestead exemption so large that it practically protected all the property in the state from levy and sale for debt had destroyed private credit. The people concluded that they had gone too far, and that the remedy was worse than the malady. A convention was called to change the constitution, and perhaps the most important change in the organic law effected by that body was the revision of the homestead, and the reduction of its value to the amount now prescribed. But this was not the only change in the homestead law effected by the constitution of 1877. Under the constitution of 1868, it was impossible for the debtor to avoid the effectiveness of his exemption by any waiver or renouncement of his right thereto in a simple promise to pay. This inhibition upon the citizens of the state was scarcely less injurious to the credit of the people than the large homestead itself. The farmers, merchants, and business men of small property, who constituted an immense majority of the people, had no basis of credit to obtain funds by means of which the really enormous resources of the state could be developed through individual ventures. This being true, the people perceived that not only must the homestead be reduced in size, but that the head of a family in whose favor it was allowed must be given the privilege of waiving it, in order to obtain credit. This resulted in that clause of the constitution above quoted, which made the waiver of homestead effective. In reliance upon this provision of the organic law, for nearly a quarter of a century, almost if not

quite all of the important contracts for lending money in this state have been made. It was, indeed, essential to private credit. A simple calculation, based upon the number of persons in Georgia entitled to the $1,600 homestead of the present constitution, and the aggregate values of property in the state, will demonstrate that, without the power to waive the homestead, values equaling all the property of the state could be set apart and exempted, and therefore withdrawn from the assets of the people available as security for debt. It may be further said that the great material development of the state during the last 22 years has been largely attributable to the stability of credit and the confidence of business men resulting from this clause of the constitution. If this provision is now to be rendered nugatory, it is obvious that it may produce the most far-reaching and disastrous results. It remains to be determined if the act of congress of 1898 creating a uniform system of bankruptcy has so impaired the remedy of creditors holding "waiver notes," as they are called, which have not yet been reduced to judgment, that the homestead exemption set apart by the trustees in bankruptcy shall be practically beyond their reach. It is insisted, for the petitioners, with great earnestness and force, that the controversy before the court possesses this wide significance. It is contended that the discharge in bankruptcy of the debtor will discharge the debt to secure which the waiver of homestead exists, and, this being true, that suit cannot be brought in the state court to obtain judgment and execution by means of which the waiver can be made effectual. Nor does the defendants' counsel seek to evade the force and significance of this contention. He denies that this court has jurisdiction to take any action to protect the creditors holding waiver notes. He says that it is no concern of the court whether the waiver is valid or invalid, whether it is destroyed or preserved. He declares that the creditor who holds a waiver has a debt no more sacred than one who does not have it; "the law pays them both,—discharges them alike." He contends that, if the waiver amounts to a lien upon the homestead, property, the creditor can go into the state court and seek to subject it thereto; otherwise, that the debt is ended by the discharge in bankruptcy. It cannot be well contended, however, that the waiver constitutes a lien, in view of the conclusive holding of the supreme court that it does not. Stafford v. Elliott, 59 Ga. 837. Let us inquire if the legislation of congress on this subject is capable of this alarming construction:

Section 6 of the bankrupt act provides:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months, or the greater portion thereof, immediately preceding the filing of the petition."

It further provides that the bankrupt, in filing his petition, shall set up his claim to exemption; that is, he shall assert what property he claims. It makes it the duty of the trustee to set apart the bankrupt's exemption, report the items, and estimate the value thereof to the court, as soon as practicable after his appointment. This is, of course, merely a ministerial duty. The statute also gives to the

court of bankruptcy the power "to determine all claims of bankrupts to their exemptions." It seems clear, from this recital, that the initial clause of the bankrupt act, relating to the exemption, is a limitation upon the operation of the act itself, rather than a positive enactment interfering with the homestead legislation of the several states. "This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force." If this be true, then it is also true that no exemptions are allowed thereby which are not prescribed by the state laws in force, and, if an exemption is set apart to the bankrupt, it is by the appropriate remedy to be subjected to the rights of the creditors therein which the law of the state has defined. And yet it is also true that if the exemption is set apart, and the bankrupt is also given his discharge, the creditor holding the waiver would be forbidden by the act to bring or maintain his action in the state court. Where, then, is his remedy? It must exist. He has a right. "Ubi jus, ibi remedium." I should have had less difficulty in indicating the remedy, and granting the relief sought by the petitioners, but for the fact that it has been recently decided by a learned judge, whose opinions are entitled to much consideration, that when the bankrupt's exemptions have been set apart by the trustee, and the action of the trustee approved, the court has no further control over the exempted property, and will not retain jurisdiction over it for the purpose of enforcing the rights of the creditor holding a note in which the bankrupt has waived his right to homestead and exemption. In re Camp, 91 Fed. 745 (decision by Judge Newman). In that case the question arose upon the application for the exemption out of the partnership assets, made by a member of a bankrupt firm who had no private property. The partnership was between father and son. The son applied for exemption, and the evidence, said the learned judge, "fails to show that B. T. Camp, the son, has such interest in the partnership assets as would authorize the allowance to him of the exemption. All it does show is to the contrary." It followed, then, that the court could not and did not allow any exemption at all. In that condition of the record, the learned judge remarked:

"While, in view of what has been stated above, it may be unnecessary at present to determine the next question raised in this case, still, as it is one of general importance, and will frequently arise, it may as well be decided now as hereafter. The question is as to the effect in bankruptcy of a waiver of all rights of homestead and exemption contained in notes made by the bankrupt."

It seems justifiable to conclude from this recitation that, since there was no exemption before the court, the decision of my learned Brother, that he had no jurisdiction to enforce a waiver thereon, was not the result of the clear and exhaustive consideration usual with him when rights are actually in controversy, but may be regarded as merely a dictum. A dictum is defined to be "an opinion expressed by the court, which, not being necessarily involved in the case, lacks the force of an adjudication." The supreme court of the United States has held that, in order to make an opinion a decision, there must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties;

and, therefore, said the learned judge delivering this opinion, "this court has never held itself bound by any part of an opinion which was not needful to the ascertainment of the question between the parties." Carroll v. Carroll's Lessee, 16 How. 287. In view of this authority, with great deference to my learned Brother of the Northern district, I feel at liberty to examine the reasoning and authorities by which he reached this conclusion. The opinion in Re Camp is principally based upon a decision in Re Bass, 3 Woods, 382, Fed. Cas. No. 1,091, where Justice Bradley rendered the opinion. There, it is true, the learned associate justice of the supreme court held that the exempted property constitutes no part of the assets in bankruptcy. "The agreement of the bankrupt in any particular case to waive the right to the exemption makes no difference," said Justice Bradley, "but, whether so or not, it is not for the bankruptcy court to inquire. The exemption is created by the state law, and the assignee acquires no title to the exempted property. If the creditor has a claim against it, he may prosecute that claim in a court which has jurisdiction over the property which the bankrupt court has not." The great eminence of the learned justice pronouncing this decision, like the high authority of his opinions, cannot be questioned. The ruling was made, however, upon a construction of the bankrupt act of 1867; and it related to the homestead law of 1868, under a condition of the law and at a time when it was true, as stated by Justice Bradley, that the agreement of the bankrupt in any particular case to waive the right to the exemption made no difference. The decision of the question now before the court must be made upon a construction of the bankrupt act of 1898, and the homestead law as prescribed by the state constitution of 1877, and now it does make a difference whether there was a waiver of the right to exemption under the act of 1877 in such promises to pay as those presented by the petitioners here. Under the constitution of 1868 there could be no effective waiver of homestead except in an instrument creating a lien, and the bankrupt law of 1867 provided that the person holding a lien need not come before the bankrupt court at all, but might enforce his lien by a proceeding in the state court irrespectively of the bankrupt proceedings. Under the constitution of 1877, as we have seen, the waiver of exemption is effective, although it may be made in an instrument not creating a lien,—in a simple promise to pay. Besides, there is no provision in the bankruptcy legislation which authorizes the holder of a simple contract note, although it contains a waiver of exemption, to go forward and sue the note to judgment, in a state court or elsewhere, after the discharge in bankruptcy has been granted. Judge Bradley's ruling goes on the idea that there is a forum elsewhere to determine the right of the creditor in whose favor the lien existed. We have seen that when such right existed there was such a forum under the bankruptcy legislation by which the decision of Justice Bradley was controlled. It will be presently seen that there is no forum now, other than the bankrupt court, to hear the claims of any creditor holding a waiver note which had not been reduced to judgment at the time the proceedings in bankruptcy were filed. It follows that the wide variation between the homestead law of 1868 and that of 1877,

and the bankruptcy law of 1867 and that of 1898, distinguishes the decision of Justice Bradley from the case now before the court. This is true, I think, of all the other cases cited by Judge Newman in support of his conclusion.

For the clearer understanding of the distinction between the effect of the waiver under the law of Georgia as it existed when it was construed by Justice Bradley, it may be serviceable to consider briefly certain decisions of the supreme court of the state bearing on the subject. The first of these will indicate that the learned justice was right in his conclusion that there was a forum which could effectively enforce a waiver of the homestead when the instrument in which that stipulation existed was a lien. This is the case of Simmons v. Anderson, 56 Ga. 55. There Chief Justice Warner said:

"The only question made here was whether the defendant in the mortgage fi. fa. could waive his right as the head of a family to claim a homestead in the property described in the mortgage, so as to prevent him from afterwards obtaining a homestead on the specific property mortgaged, and claiming the same as homestead exemption, as the agent of his wife, from being subject to the mortgage fi. fa."

The decision was that the waiver in the mortgage was binding, and it was enforced by the courts of the state. This was under the homestead law of 1868. A very different rule was announced, however, by the same court, where the waiver of a homestead did not appear in an instrument creating a lien. This will be found in Stafford v. Elliott, 59 Ga. 837; Mr. Justice Jackson delivering the opinion of the court. This, too, was under the constitution of 1868. "This case," said the learned justice, "involved the question of the effect of a general waiver of the right of homestead made in a promissory note." The agreed facts were: Stafford, Blalock & Co. held a note against Z. H. Elliott, dated and due in 1873. They sued the note to judgment, and caused execution to be issued and levied upon 150 acres of land. The note was an ordinary promissory note, except that it contained a waiver of the right of homestead,—what is commonly called a "general waiver." At the time Elliott gave the note, he owned the land. After giving the note, he applied for and procured a homestead on the land, as agent of his wife and children; and the question submitted was whether the land was subject to levy and sale for the debt or not. The court held that no lien whatever was created by the note, and proceeded to distinguish the case of Simmons v. Anderson, supra, remarking:

"This case is wholly unlike that, in that no lien is created in this case, and, further, if he obtains credit by creating a lien on a particular piece of property, and in express words makes the lien secure by covenanting not to take a homestead on it, then he is estopped from so doing; but a general waiver like this in the promissory note, describing nothing, creating a lien on nothing, does not estop him."

And so the land was held not subject to the debt. See, also, Burroughs v. White, 69 Ga. 845.

The effectiveness and validity of the waivers in instruments creating a lien, and the distinction between that and the general waiver like those now under consideration, and the different rules obtaining under the constitution of 1868 and that of 1877, were again before

·the supreme court of the state in the case of Broach v. Powell, 79 Ga. 81, 3 S. E. 763. In that case, also, an exemption in bankruptcy was relied upon by the debtor. There Chief Justice Bleckley, with his accustomed vigor and clearness, reaffirms the previous rulings, and so conclusively establishes the law that further citation of authority will be superfluous.

From these authorities the conclusion is, I think, irresistible that the holder of a waiver obligation, whether special in the form of a lien or a general waiver, as in a promissory note, had, under the bankrupt act of 1867, no right to admission to the court of bankruptcy for the purpose of enforcing his demand against the bankrupt exemption, as it was then limited by the homestead law of 1868. If his waiver was general, he had no right anywhere, as against that home-stead. If his waiver was in the form of a lien, or in an instrument creating a lien, as held by Justice Bradley in Re Bass, supra, and the supreme court of Georgia in the decisions above quoted, he might enforce his claim in the state court,—the forum provided for him. There was no failure of remedy for him. The contrary is true now, as to creditors holding waivers in promissory notes and similar promises to pay. We have seen that the supreme court of the state has held that these waivers do not constitute a lien against the home-stead property unless they have been reduced to judgment. They cannot be reduced to judgment in the state court, if, after their execution, the bankruptcy court takes jurisdiction of the debtor's property, brings in the creditors, and proceeds conformably to the bankruptcy law to set apart the exemption and to grant the discharge. The obvious conclusion is, that unless this large class of creditors are to be deprived of the effectiveness and vitality of that stipulation provided for them by the organic law of the state which was the security for their debt, that it is the duty of the bankrupt court by suitable decrees to afford them the opportunity of establishing the lien provided for them by the law of the state. There are no liens existing in behalf of the petitioners now before the court, but they all have waiver notes which entitle them to liens. "Id certum est quod certum reddi potest." Under the plenary power given the bankrupt court by the act of congress, it is competent to protect the rights of these creditors, and to avoid the rude shock to private credit in this state which would result if such creditors should be turned out of court with no opportunity whatever, in the face of the bankruptcy discharge, to establish their liens in the courts of the state. A construction which would lead to these calamitous results should not be adopted, unless rendered obligatory upon the court by the plainest and most imperative provisions of the law. Now what appropriate remedy is there within the jurisdiction of the court to grant relief to creditors of this class? Shall the creditor be remitted to the state court? This would seem antagonistic to the scheme, and even to the philosophy, of the bankruptcy legislation. These creditors have already been brought before this court. Having no liens, they had no power to stay out, unless they wished to abandon their debts altogether. Shall we bring them in here, and then turn them out, and require each man to bring a separate suit elsewhere, with all the

costs and expenses incident thereto? It is true, I think, that a very large proportion of the bankrupts in this state will possess assets less in value than the amount of the exemption. Quite as large a proportion have waived this exemption in favor of their creditors. Shall all the creditors of such bankrupts be denied relief here, when they are already before the court, and driven to a multiplicity of suits, which will eat up the substance of the debt, when in one cheap, uniform method of procedure the rights of everybody may be adjudicated in this court? Fortunately the court of bankruptcy is given jurisdiction to do everything necessary to the administration and distribution of the bankrupt estates. Bankr. Act 1898, c. 2, § 2. And, after this enumeration of powers, it is also declared by the law that this express grant shall not take away any of the powers the court would have had but for the enumeration of certain specific powers. Upon examination it will be seen that the limitations upon the power of the court were much greater under the act of 1867. The court of bankruptcy, as we have seen, is now given the express power "to determine all claims of bankrupts to their exemptions." Now, what does this language import? If the court has the power to determine that the bankrupt is entitled to his exemption as against the creditors, it certainly has the correlative power to determine the right of the creditor to attack the exemption upon any legal ground. This language is not a limitation upon the power of the court, to be strictly construed, but it is a grant of jurisdiction, which must be beneficially construed to carry out its purpose. The language must have a reasonable construction, and with the express grant of power to determine all claims of the bankrupt to his exemption there seems clearly to go the power to determine that the bankrupt has no claim to an exemption in favor of particular creditors, because, under the constitution of his state, as to them he has solemnly renounced and waived it.

Pursuant to these conclusions, in the cases before us the demurrer will be overruled, the applications for discharge will be stayed, and, since these claims and the waivers of exemption are not contested, the court will by suitable decree establish the lien of the creditors against the homestead set apart by the trustee. Since the property is already in custodia legis, the levy thereon provided for by the statute of the state may be regarded as superfluous. In the meantime the application for discharge will be stayed until the rights of the petitioning creditors are definitely settled, and the referees will be directed by suitable orders in similar cases which may subsequently arise to report whether the creditor, under the law of Georgia, is entitled, because of the provisions of his contract, to have his lien established against the exemption of the bankrupt. Let a suitable order be drawn, directing the trustee to carve out of the property set apart as a homestead exemption to the bankrupt free from the claims of general creditors a portion of said property of the value of $300, which shall be set apart as a homestead to said bankrupt, to be free from the claims of all creditors of said bankrupt, including such creditors as hold general waivers of homestead. The other portion of said property set apart in the $1,600 exemption shall be dealt with by the

trustee precisely as if it did not constitute part of the homestead exemption, except that a separate account shall be kept of the proceeds of said portion, and the same shall constitute a special fund for distribution to the creditors holding general waivers of homestead made by the bankrupt, and to this fund they must first resort for payment of their claims before sharing in the general fund; provided, however, that should the bankrupt, or any one for him, pay off the claims of such creditors holding general waivers of homestead within 30 days from this date, the entire $1,600 homestead set apart shall stand and be approved as the exemption of the bankrupt.