## WOODRUFF v. CHEEVES et al.

### (Circuit Court of Appeals, Fifth Circuit. January 8, 1901.)

### No. 874.

1. BANKRUPTCY—JURISDICTION OF COURTS OF BANKRUPTCY—EQUITABLE POWERS.

After the trustee of a bankrupt had set apart to him without objection the property exempted by the laws of the state, and the court had fixed the time for hearing the bankrupt's application for discharge, properly made, certain creditors filed a petition setting up that they held notes of the bankrupt in which he had waived his right of exemption, as permitted by the state statute, but that under the laws of the state they could only subject the exempt property to the payment of their claims by obtaining judgment thereon, and levying on such property. They prayed the court to withhold the bankrupt's discharge, and to take possession of the property through the trustee, and administer the same for the benefit of the petitioners. *Held*, that the court, as a court of bankruptcy, had no power under Bankr. Act 1898 to grant the prayer of such petition, either by refusing or withholding the bankrupt's discharge, no statutory ground therefor being alleged; or by taking possession of and administering the exempt property, which, under sections 6 and 70a, constituted no part of the estate in bankruptcy.

2. SAME—JURISDICTION OF PLENARY SUITS.

A district court is vested with no jurisdiction by Bankr. Act 1898 to entertain a plenary suit in equity by creditors of a bankrupt to reach and subject to their claims his exempt property on the ground that they hold notes in which he expressly waived his right of exemption.

Appeal from the District Court of the United States for the Southern District of Georgia.

Z. T. Woodruff, a citizen of Dooly county, Ga., was adjudged a bankrupt in the district court for the Southern district of Georgia, on his own petition, on January 6, 1899. On the 28th day of that month O. C. Cheeves was appointed trustee. On February 23d the trustee made his report to the court of the articles set off to the bankrupt by him, as provided in section 47, cl. 11, of the bankrupt act, and required by rule 17 of general orders in bankruptcy (32 C. C. A. xix., 89 Fed. viii.). No exception to this action on the part of the trustee was taken by any creditor within 20 days after the filing of the report. On March 23d the bankrupt filed his application for a discharge. This application was set to be heard before the judge of the court of bankruptcy on June 5th, and due notice thereof was given. On May 2d a petition was presented to the district court for that district, as follows:

"In the Matter of Z. T. Woodruff, Bankrupt. In Bankruptcy.

"The petition of J. D. Lester, H. & D. Keen, the Farmers' Supply Company, Gabe Lippman, and Max Cohen respectfully shows:

"(1) That they are creditors of said bankrupt, and severally hold and own promissory notes given by the said bankrupt, containing a waiver by him of the right and benefit to the homestead and exemption allowed and prescribed by the laws of the state of Georgia.

"(2) The notes held by petitioners respectively against said bankrupt are for the principal sums following, namely: J. D. Lester, two notes, dated July 31, 1897, for $275, due October 1, 1898, with interest from October 1, 1897, at the rate of 8 per cent. and 4 per cent., respectively. On the first-mentioned note the said bankrupt has been credited with the sum of $61.70. Said bankrupt is still indebted to said Lester for the full amount of principal and interest due on said notes, after deducting said credit. Eli Woodruff is also a joint maker of said notes. Said bankrupt is indebted to H. & D. Keen on a note given by him jointly with Eli Woodruff for $100, besides interest from maturity at the rate of 8 per cent. per annum, dated January 20, 1897, and

due November 1, 1897. Said bankrupt is indebted to the Farmers' Supply Company in the sum of $16,41, besides interest at 8 per cent. per annum from maturity, on a note dated January 16, 1898, and due October 1, 1898. Said bankrupt is indebted to Gabe Lippman in the sum of $21.60 principal, besides interest from maturity at 8 per cent. per annum, on a promissory note dated January 18, 1898, and due September 15, 1898. Said bankrupt is indebted to petitioner Max Cohen in the principal sum of $324, besides interest from maturity at 8 per cent. per annum, on a promissory note given by him, dated February 11, 1898, and due 12 months after date. In each and all of said notes said bankrupt has, in writing, expressly waived and renounced his right to the benefit of the exemption provided in and by the constitution and laws of the state of Georgia; said waiver being stated in said notes constituting the contract of indebtedness, and being made in accordance with the provisions of the constitution and laws of said state authorizing and empowering the debtor to waive or renounce in writing his right to the benefit of the exemption provided for by the constitution and laws of said state.

"(3) O. C. Cheeves, the duly-appointed trustee of the estate of said bankrupt, has set apart the said bankrupt's exemption, and reported the items and the estimated value thereof to the court, to which report reference is hereby made.

"(4) The said bankrupt has applied to the court to have a full discharge from all the debts provable against his estate under said bankrupt act, except such debts as are excepted by law from such discharge.

"(5) Petitioner Max Cohen holds a deed to the land set apart to and constituting a portion of the exemption of said bankrupt, the said deed having been made and delivered by said Z. T. Woodruff on the 11th day of February, 1898, in accordance with section 2771 et seq. of the Revised Code of the state of Georgia (being sections 1969, 1970, and 1971 of the Code of 1882), in order to secure the debt hereinbefore mentioned. Said deed will be to the court shown.

"(6) The other petitioners above named hold no security for their aforesaid debts, save and except so far as a waiver of homestead and exemption may be construed as a security. Said notes containing said waivers will be to the court shown.

"(7) Petitioners show that, if the discharge applied for by the said bankrupt is granted by the court at this time, and without making provision for the protection of petitioners, and the enforcement of their aforesaid waivers of homestead, your petitioners will be without remedy.

"(8) Under the laws of the state of Georgia a debtor's exemption cannot be subjected to the payment of a debt containing a waiver of homestead, except by first putting said debt in judgment, and afterwards causing the execution issued thereon to be levied on the exempt property in accordance with the provisions of sections 2850 et seq. of the Revised Code of this state. If a discharge be granted by this court without reserving to petitioning creditors the right to sue on said debts and put the same in judgment, and without giving them a judgment for their said debts, or providing means whereby they may obtain judgment thereon, your petitioners would be left without means of enforcing their rights created and arising out of the aforesaid waivers of exemption by said bankrupt debtor, and will be without remedy.

"(9) The entire property of said bankrupt, so far as turned over by him to the trustee, and not consumed in expenses, has been set apart to him as an exemption. The said Eli Woodruff, joint maker of some of the aforesaid notes, as hereinbefore stated, is likewise a bankrupt, and his property is in the hands of the same trustee, and has likewise been set apart by said trustee to him as an exemption, and the said Eli Woodruff has likewise waived in the aforesaid notes signed by him all right and benefit of exemption under the constitution and laws of the state of Georgia.

"(10) Wherefore your petitioners, being without remedy at common law, pray that this honorable court may grant petitioners such relief as can be afforded and administered in a court of equity, and, if need be, to frame such remedy and appropriate form of proceeding as may protect their rights and interests in the premises. And petitioners pray that said bankrupt's application for discharge be stayed, and that the discharge applied for be not

granted until petitioners are given an opportunity to enforce their said waivers of homestead, either by proceedings in the state court or in this court, as this court may determine; that, in the event a discharge be granted, the same be so molded, conditioned, and qualified as to save and reserve to petitioners their rights to reach the exemption set apart to said bankrupt, as under and by virtue of the aforesaid waivers they are severally entitled to do; that the court grant such remedies and forms of relief and authorize and direct such proceedings as may enable petitioners to render their aforesaid waivers effective, and reach the property set apart to said bankrupt as his exemption; that the court protect and preserve said exempted property, and provide for its due administration and distribution, and to this end to appoint a receiver to hold the same, and sell and administer the proceeds, or otherwise provide for the protection and due distribution of said property, under such forms, procedure, and remedies as are usual and appropriate to a court of equity; that the court grant such other and further relief as may be meet and proper. Petitioners will undertake to prove the facts stated in this petition without answer under oath from the bankrupt, or any other person who may be deemed a proper defendant to the prayers of this petition; discovery and answer under oath being expressly waived."

On the presentation of this petition the judge of the district court made thereon the following order:

"The foregoing petition read and considered, and ordered filed, and the same will be heard and passed upon in the district court of the United States for the Western division of the Southern district of Georgia, at Macon, on Monday, 5th day of June, 1899. Let the defendant bankrupt, above named, show cause in said court at said time why the prayers of said petition should not be granted.

"In open court, May 2, 1899."

To this petition the bankrupt, by his counsel, submitted: "(1) A general demurrer. (2) And for special cause of demurrer the bankrupt says that there is no authority of law for instituting the proceedings in this case. (3) That the bankrupt court has no jurisdiction over exempted property, and has no jurisdiction to administer it. (4) That the waiver of homestead relied on is no legal reason for denying bankrupt his exemption under the constitution and laws of Georgia. (5) That the exception to bankrupt's discharge, and not injunction, is the proper remedy for the petitioners. (6) For further cause of demurrer bankrupt says that there is no authority of law in the bankrupt act for this proceeding, nor for the relief sought. This is an effort to change the bankrupt law, and carve out exceptions to a discharge which are not contemplated by the act, and to provide remedies not authorized by law. The right to a discharge in bankruptcy is a statutory right. How it can be obtained, what debts it affects, and what objections may be urged, are to be determined alone by the bankrupt act; and it does not authorize this proceeding, nor the relief which it seeks."

On August 5th the district court gave judgment as follows:

"In the Matter of Z. T. Woodruff, Bankrupt. In Bankruptcy.

"Petition of John D. Lester and other creditors objecting to the discharge prayed for, and relief, etc. This came on on be heard at this term, and was argued by counsel, and thereupon, upon consideration thereof, it was ordered, adjudged, and decreed that the demurrer interposed by the bankrupt to the petition be overruled, and that the trustee, O. C. Cheeves, carve out of the property heretofore set apart by said trustee as a homestead exemption to the bankrupt free from the claims of general creditors the sum of $300 in household and kitchen furniture and provisions, including in the charging against said amount such provisions as the bankrupt may have heretofore pending the settlement of this issue reduced to cash, and not turned over to his trustee, and that the $300 so set apart to said bankrupt be held by said bankrupt free from the claims of all creditors of said bankrupt, including such creditors as hold general waivers of homestead. It is further ordered, adjudged, and decreed that all the other portion of the property of said bankrupt heretofore set apart to him in the $1,600 exemption shall be dealt with

by the trustee precisely as if it did not constitute a part of the homestead exemption, except that a separate account shall be kept of the proceeds of said portion, and that the same shall constitute a special fund for distribution to creditors holding general waivers of homestead from the bankrupt, and that the said creditors holding general waivers of homestead must first resort to the fund thus arising out of the homestead exemption for the payment of their claims before sharing in the general fund of said bankrupt should such general fund arise over and above the fund arising from homestead exemption: provided, however, that should the bankrupt, or any one for him, pay off the claims of such creditors as hold general waivers of homestead within thirty days from this date, the entire $1,600 homestead heretofore set apart to said bankrupt shall stand and be approved as the exemption of said bankrupt. It is further ordered, adjudged, and decreed that the trustee hold possession of the entire homestead until the expiration of thirty days from this date, and at the expiration of said period of thirty days shall convert the same into money as soon as it may be done without detriment to the best interest of the estate. It is further ordered, adjudged, and decreed that the bankrupt shall yield possession to the trustee of the homestead heretofore set apart to him over and above the aforesaid $300 on demand by said trustee. It is further ordered, adjudged, and decreed that the bankrupt's application for discharge be stayed until the rights of the creditors holding homestead waivers can be definitely settled and enforced under the provisions of this decree, and that a lien be established in favor of the creditors holding waivers of homestead against the homestead set apart by the trustee and the funds arising therefrom, save and except the $300 hereinbefore mentioned."

Allen Fort, for the petition.

J. I. Hall and O. T. Wimberly, opposed.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case, delivered the opinion of the court.

It appears from the record brought up by the petition for review in this case that the bankruptcy proceedings were ripe for the application by the bankrupt to obtain his discharge. More than 30 days and less than 12 months before the presentation of his application for a discharge he had been adjudicated a bankrupt, and a trustee had been appointed. There is no suggestion that any of the proper schedules have not been made up and filed. It affirmatively appears that the trustee had reported, agreeably to the statute and the general orders, the property set off to the bankrupt exempt from seizure in satisfaction of his debts under the law of the state of his domicile, and that no objection to that report had been made within 20 days, or ever, by any of the creditors or other person interested in the estate. The application thus being timely, and in proper form, it was the duty of the judge to hear the same, and investigate the merits thereof, and discharge the applicant, unless such proofs and pleas made in opposition thereto by parties in interest who had been given sufficient time and a reasonable opportunity to be heard made known to the court that he had (1) committed an offense punishable by imprisonment, as provided in the act of July 1, 1898; or (2) had, with fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his true condition might be ascertained. Section 14b. Nothing of this kind was at-

tempted to be shown, and what was shown assumes that these statutory objections did not exist. A very candid and able statement of the relations of the appearing creditors to the bankrupt and his estate was submitted to the court, which the court received, considered, and treated as the institution of a plenary proceeding in equity. In re Woodruff (D. C.) 96 Fed. 317. It showed substantially that, with reference to the term "secured creditors," as used in the bankrupt act, the complainants are unsecured creditors, who, as such, had proved their claims, which, while they were evidenced by instruments in writing waiving the homestead and exemption rights, constituted no lien on the property of the debtor, and could be availed of only by putting the same in judgment, and seizing the property under final process issuing thereon; that, such judgments not having been obtained and process issued and levied before the adjudication of bankruptcy, if the bankrupt should now be discharged in the terms of the statute the complainants would be remediless,—if, in fact, they were not already remediless,—unless the district court, in the exercise of the equity jurisdiction conferred by the bankruptcy act, was able to grant them relief, and cause the exempt property held by the debtor to be taken by the trustee and administered for the benefit of the complainants and others, if any, holding like claims. The bill of complaint does not aver, or by implication suggest, that the bankrupt is not a person of that class in whose favor the organic and statutory law of the state of his domicile exempts from seizure for the satisfaction of his debts property, real or personal, or both, to the amount in value of $1,600; nor does it aver, or by implication suggest, that the property set apart to him by the trustee, and duly reported to the court, was of greater value than the amount thus limited by law. On the contrary, it assumes, by necessary implication, at least, that the applicant for discharge does belong to the class for whose benefit the laws allow the exemption, and that the property set apart by the trustee does not exceed in value the limit of the allowance. It is not shown that there are not other creditors whose debts are evidenced by writing, making the same waiver as is made in the complainants' contracts, or that there are not also other creditors whose claims are not of the class of those held by the complainants. The purpose and prayer of the bill is that the property so set apart, and now held by the bankrupt as his by reason of the exemption laws of his state, shall be recovered from his possession, and taken into the possession of the trustee, to be administered by the district court as a court of bankruptcy or as a court of equity, for the benefit of not all the creditors of the bankrupt, but of such only as hold claims against him with written evidence of his waiver of his homestead and exemption rights, as far as he is permitted to waive them, under the constitution and statutes of his state. The distinguished and able counsel who appeared for the complainants, both in the preparation of his pleading in the lower court and in the oral argument and printed briefs which he submitted to this court, was evidently in doubt as to the capacity in which his application was to be received by the district court. The opening words of the very learned opinion

of the judge of the district court in Re Woodruff, supra, are: "These are plenary proceedings in equity." Towards the close of his opinion we find this language: "Fortunately, the court of bankruptcy is given jurisdiction to do everything necessary to the administration and distribution of the bankrupt estates;" citing Bankr. Act 1898, cl. 2, § 2. If the bill is addressed to the court of bankruptcy to invoke its powers of administering the estates of bankrupts, it encounters the provision that:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months, or the greater portion thereof, immediately preceding the filing of the petition." Section 6.

And this other provision:

"The trustee of the estate of a bankrupt * * * and his successor or successors * * * shall, in their turn, be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt," etc. Section 70a.

It seems clear to us that this language of the statute leaves no room for argument to show that the exempt property constitutes no part of the estate in bankruptcy subject to administration by the trustee or by the court of bankruptcy. If the bill of complaint is addressed to the district court to invoke the exercise by that court of jurisdiction to entertain a plenary proceeding in equity between the parties, some observations which we find in the opinion of the supreme court in the case of Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175 (announced since these proceedings were had in the district court) seem to us to be pertinent to and instructive in the inquiry which now engages us. The warp and woof of the opinion, its reasoning and review of precedents, are so closely woven and finished that its force cannot be fully shown by such detached excerpts as we can make, and we earnestly commend it to the careful scrutiny of all who, in practice, are called upon to construe the provisions of the bankrupt law now in force:

"Under the act of 1867 * * * the distinction between proceedings in bankruptcy, properly so called, and independent suits at law or in equity between the assignee in bankruptcy and an adverse claimant, was distinctly recognized and emphatically declared. Jurisdiction of such suits was conferred upon the district courts and circuit courts of the United States by the express provision to that effect in section 2 of that act, and was not derived from the other provisions of sections 1 and 2, conferring jurisdiction of proceedings in bankruptcy. * * * The decisions of this court under the earlier bankrupt act of August 19, 1841 (chapter 9), are very few in number, and afford little aid in the decision of the present case. The one most often cited in favor of maintaining such a suit as this under the existing law is Ex parte Christy (1845) 3 How. 292, 11 L. Ed. 603. But section 8 of the act of 1841 contained the provision (afterwards embodied in section 2 of the act of 1867, and above quoted) conferring on the circuit courts concurrent jurisdiction with the district courts of suits at law or in equity between assignees in bankruptcy and adverse claimants of property of the bankrupt. * * * The general provisions at the beginning and end of this section [section 2, Act July 1, 1898] mention 'courts of bankruptcy' and 'bankruptcy proceedings.' * * * Proceedings in bankruptcy generally are in the nature of proceedings in equity; and the words 'at law,' in the opening sentence, conferring on the courts of bankruptcy 'such jurisdiction at law and in equity

as will enable them to exercise original jurisdiction in bankruptcy proceedings,' may have been inserted to meet clause 4, authorizing the trial and punishment of offenses the jurisdiction over which must necessarily be at law, and not in equity. The section nowhere mentions civil cases at law, or plenary suits in equity. And no intention to vest the courts of bankruptcy with jurisdiction to entertain such actions and suits can reasonably be inferred from the grant of the incidental powers in clause 6 to bring in and substitute additional parties 'in proceedings in bankruptcy,' and, in clause 15, to make orders, issue process, and enter judgments 'necessary for the enforcement of the provisions of this act.' The chief reliance of the appellant is upon clause 7. But this clause, in so far as it speaks of the collection, conversion into money, and distribution of the bankrupt's estate, is no broader than the corresponding provisions of section 1 of the act of 1867; and in that respect, as well as in respect to the further provision authorizing the court of bankruptcy to 'determine controversies in relation thereto,' it is controlled and limited by the concluding words of the clause. 'except as herein otherwise provided.' These words, 'herein otherwise provided,' evidently refer to section 23 of the act, the general scope and object of which, as indicated by its title, are to define the 'jurisdiction of United States and state courts' in the premises. * * * The bankrupt acts of 1867 and 1841, as has been seen, each contained a provision conferring in the clearest terms on the circuit and district courts of the United States concurrent jurisdiction of suits at law or in equity between the assignee in bankruptcy and an adverse claimant of property of the bankrupt. We find it impossible to infer that when congress, in framing the act of 1898, entirely omitted any similar provision, and substituted the restrictive provisions of section 23, it indicated that either of those courts should retain the jurisdiction which it had under the obsolete provision of the earlier acts. On the contrary, congress, by the second clause of section 23 of the present bankrupt act, appears to this court to have clearly manifested its intention that controversies not strictly or properly a part of the proceedings in bankruptcy, but independent suits brought by the trustee in bankruptcy, to assert a title to money or property as assets of the bankrupt against strangers to those proceedings, should not come within the jurisdiction of the district courts of the United States, 'unless by consent of the proposed defendant,' of which there is no pretense in this case."

The parties to the suit we are considering are not strangers to the bankruptcy proceeding, and the case, that far, at least, differs from the case of Bardes v. Bank,—a difference which we do not overlook in announcing that, in our view, the authority and opinion of the supreme court in that case makes it clear to demonstration that the district court should have sustained the demurrers to the complainants' bill, and have granted the bankrupt his discharge. It follows that the judgment of the district court must be reversed, and this cause remanded to that court, with direction to dismiss the complainants' bill, at their cost, and to enter an order nunc pro tunc as of the date of August 5, 1899, discharging the bankrupt agreeably to law.