### Schoffen and wife vs. Landauer and others, imp.

*March 24 — April 8, 1884.*

EXECUTION: HOMESTEAD. *(1, 2)* Occupancy of homestead by debtor: Selection. *(3)* Vacating sale for lack of opportunity to select.

1. A debtor who owns and actually occupies one dwelling-house cannot claim that another dwelling-house not so occupied is exempt as his homestead.
2. The quarter of an acre which is exempt as a homestead must be occupied solely for the purposes of a homestead. The debtor cannot select such quarter of an acre in such a way as to include, besides the building occupied by himself, other buildings leased to tenants, unless they are occupied by servants employed in his family.
3. Although a debtor was not notified of a sale of his land on execution and had no opportunity to select his homestead, if he was not injured by the want of such notice and opportunity the sale will not be set aside.

APPEAL from the Circuit Court for *Kenosha* County.

The case is thus stated by Mr. Justice TAYLOR:

" This action was brought by the respondents, husband and wife, to restrain the delivery of a sheriff's deed on an execution sale, and to set aside such sale. The ground upon which the action is based is the allegation that the property sold by the sheriff on execution was the homestead of the

respondents at the time the same was sold. The evidence upon the trial shows the following facts: .

"Ever since 1865, the respondent *Andrew Schoffen* has owned the south half of lots 4 and 5, and lot 6, in block 63, in the city of Kenosha. The south half of lots 4 and 5, and lot 6, constituted together a strip of land fourteen rods long and four rods wide, extending east and west the whole length of block 63, lot 6 being the east six rods of the strip. In 1862 the respondent built a dwelling-house on the east end of lot 6, and lived in it with his family from that time down to 1869 or 1870, when he moved with his family into the buildings on the west end of the strip, being the south half of lots 4 and 5. Previous to that time the buildings on the west end of the strip had been occupied by tenants of the respondents as a store and saloon. In 1869 or 1870 he fitted it up for store, saloon, and dwelling-place for himself and family, and moved into and occupied the same as a home for himself and family continuously from that time down to 1880 and until after the sale on execution which is sought to be set aside; and during that time the dwelling-house on the east end of the strip was rented and occupied by the tenants of the respondent as a dwelling-house, the respondent reserving the right, at times, to use the cellar under the dwelling to keep vegetables in, and the right to use the well on the east end of the lot.

The defendants sold the whole of the strip upon executions against the respondent. The south half of lots 4 and 5 were sold as a separate parcel. Lot 6 was sold as a separate parcel, for the sum of $700. When the time for redemption expired, the sheriff made a deed to the purchaser for four rods in length off the east end of the strip, on which the small dwelling-house stands. The ten rods of the west end of the strip, on which the store, saloon, and barn stand was not conveyed by the sheriff, and defendants make no claim to that part of the premises.

"The court set aside the sale and deed for the four rods off the east end of the strip of land, holding that such end was the respondents' homestead. From that judgment the defendants appeal."

For the appellants there was a brief signed by *Charles Quarles*, of counsel, and *J. V. Quarles*, attorney, and the cause was argued orally by *Mr. J. V. Quarles*.

For the respondents there was a brief by *Fish & Dodge*, and oral argument by *Mr. Fish*.

TAYLOR, J. The real question presented by the case is whether the east end of the fourteen-rod strip of land, with the dwelling-house situated thereon, was the homestead of the respondents at the time the execution sale was made. The respondents rest their claim to hold the dwelling-house and the adjoining land on the east end of the lot as their homestead on the ground that they have claimed it to be such, although they have not lived on it for the ten years next preceding the sale, and have in fact had their home and lived in the buildings on the west end of the lot during all this time. The statute says that the homestead, when in a city, shall consist of a quantity of land not exceeding a quarter of an acre, and the *dwelling-house* thereon, and its appurtenances, owned and occupied by any resident of this state.

Although there is a dwelling-house on the east end of the lot, which the respondents claim as their homestead, owned by them, yet it is very clear that it has not been their *dwelling-house* for nearly ten years before the sale, and it is also equally clear that during all this time they owned the west end of the lot with the buildings and appurtenances, and occupied such buildings as a *dwelling-house*. We think this case fully as strong against the claim made by the respondents as the claim made by Jarvais and his wife in the case of *Jarvais v. Moe*, 38 Wis., 440. In that case the

question was fully and carefully considered as to what effect a removal from one dwelling-place and taking up another dwelling-place had upon the claim of the person so removing to a right of homestead interest in the first dwelling-place. The late learned Chief Justice RYAN, after a very full discussion of the subject, closes the argument as follows: "The intention [to return to the first homestead] which is sufficient to rebut the presumption [of abandonment] must be positive and certain, not conditional or indefinite. Certain it is that the respondent gained a new residence on his other property. 'Where the owner of a house and lot voluntarily removes from it and takes up another residence in the same town, . . . with a view to the more convenient transaction of business, . . . it can no longer be said to be his homestead. . . . His residence, his home, would be at his new abode.' It is certain that the respondent was at home in his hotel while he kept it. By the rule in *Phelps v. Rooney,* [9 Wis., 70], he acquired the right to claim exemption of the hotel as his homestead, as in fact it was. And we cannot doubt, from the evidence, that he would have done so had it been for his interest. Had he done so, all the evidence which he now gives to show that his homestead was elsewhere would not have availed to defeat his claim. The respondent's right of exemption could not be double or ambiguous. His right in possession, the occupation of the statute, excluded all right elsewhere by intention or construction." These remarks of the learned chief justice apply, with their full force, to the case at bar. It is very clear, from the evidence in the case, that the respondents had a homestead right in actual possession in the buildings and premises on the west end of the lot in question, at all times after they took up their abode there and until after the sale made upon the executions in question in this case; and, having a home-

stead right there by actual possession and dwelling, they cannot have a homestead right in the house on the east end of the lot by construction and claim. *Phelps v. Rooney*, 9 Wis., 70; *Herrick v. Graves*, 16 Wis., 157; and *In re Phelan*, 16 Wis., 76, are in affirmance of the rule adopted in *Jarvais v. Moe.*

It was suggested on the argument that the respondents might have so selected their quarter acre out of the whole strip as to have included the house on the *east* end of the strip, and also that part of the buildings on the west end which had been occupied by them as a dwelling-house, and that they had a right to make such selection. We think they would not be authorized to do that. The quarter acre which is exempted as a homestead must be occupied solely for the purposes of a homestead. If there be two dwellings, or a dwelling and other buildings, on the quarter acre, one dwelling occupied as a homestead, and the other buildings leased to tenants, the houses so leased and the ground on which they stand are not exempt, unless in a case where the rented dwelling is occupied by servants who were employed in the family of the owner. This was so held by this court in *Casselman v. Packard*, 16 Wis., 114; *Hoffman v. Junk*, 51 Wis., 613.

It is clear that the respondents were not entitled to select the house on the east end of the lot as a part of their exempt homestead, and that the defendants have left a full quarter of an acre of the premises in a compact form, upon which the dwelling-house, barn, and appurtenances are situated, as their exempt homestead. If it be admitted that the respondents were not notified by the sheriff of the levy and sale on execution, and consequently they had no opportunity to select the premises which they claimed as their homestead, it does not appear from the evidence that they have suffered any injury by such want of notice and oppor-

tunity to select, and in such case a court of equity should not set aside the sale.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to that court to dismiss the complaint.