## In re WELLS.

(District Court, W. D. Arkansas, Ft. Smith Division. December 28, 1900.)

1. BANKRUPTCY—GOODS EXEMPT—PURCHASE PRICE—TRUSTEE'S TITLE.

Const. Ark. art. 9, § 2, provides that specific articles not exceeding $500 in value may be selected for exemption. Bankr. Law 1898, § 70a, provides that the trustee of the bankrupt's estate shall be vested with the bankrupt's title, except as to exempt property. Sand. & H. Dig. §§ 4727, 4728, forbid exemption for the vendor's debt for the purchase price. *Held*, that the trustee in bankruptcy did not acquire title to goods claimed as exempt by the bankrupt, though the purchase price thereof had not been paid.

2. SAME—VENDOR'S LIEN—NOT ENFORCEABLE IN BANKRUPTCY COURT.

Where a bankrupt claimed exemptions under Const. Ark. art. 9, § 2, which states the exemptions allowed to the head of a family, the fact that the purchase price of the goods claimed as exempt had not been paid would give the seller no right to enforce his vendor's lien in a court of bankruptcy.

In Bankruptcy.

L. & A. Scharff sold to the bankrupt certain liquors, which, when Wells was adjudged a bankrupt, remained in his stock in unbroken packages, and unpaid for. Wells claimed this liquor as exempt. The trustee set it apart to him as a part of his exemptions. L. & A. Scharff and two other creditors of the bankrupt excepted to the action of the trustee in that behalf on two grounds: (1) Because the purchase money for the exempted property had not been paid; (2) because the bankrupt has not made a full, complete, and fair disclosure of the property belonging to his said estate, as required under the provisions of the bankrupt law. The referee sustained the action of the trustee, and the creditors appealed.

Martin & Winchester, for creditors.

B. T. Duval, for bankrupt.

ROGERS, District Judge. Chapter 3, § 6, Bankr. Law 1898, is as follows:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the

petition in the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

Article 9, §§ 1, 2, of the state constitution of 1874 are as follows:

"Section 1. The personal property of any resident of this state who is not married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of two hundred dollars in addition to his or her wearing apparel, shall be exempt from seizure on attachment, or sale on execution, or other process from any court issued for the collection of any debt by contract: provided, that no property shall be exempt from execution for debts contracted for the purchase money therefor while in the hands of the vendee.

"Sec. 2. The personal property of any resident of this state who is married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of five hundred dollars in addition to his or her wearing apparel, and that of his or her family, shall be exempt from seizure on attachment, or sale on execution, or other process from any court on debt by contract."

Sections 4727, 4728, Sand. & H. Dig., are as follows:

"Sec. 4727. In any action brought in the courts of this state for the recovery of money contracted for property in possession of the vendee, it shall not be lawful to include said property in any schedule intended to protect said property, or exempt it from seizure on attachment or sale on execution or other process issued from any court for the collection of any debt upon the claim of the plaintiff.

"Sec. 4728. In any such action the court or clerk shall issue, on petition of the plaintiff, duly verified, describing the property and stating its value, at or after the commencement of such action, an order, which may be embodied in the original summons, stating the name of the court and the style of the action, and directing the sheriff or other officer to take the property described in the petition, and hold the same subject to the orders of the court."

It was held in Friedman v. Sullivan, 48 Ark. 213, 2 S. W. 785, that the provision in section 1, art. 9, of the constitution of 1874, "that no property shall be exempt from execution for debts contracted for the purchase money thereof while in the hands of the vendee," applies also to the second section in that article, and excludes all classes of persons from exemption of such property from execution.

Section 70a, Bankr. Law 1898, is as follows:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt."

Section 47a, Bankr. Law 1898, provides that:

"Trustees shall respectively * * * (11) set apart the bankrupt's exemptions and report the items and estimated value thereof to the court as soon as practicable after their appointment."

The property claimed by Wells as exempt was manifestly his property from the date of its purchase. No effort is made to show that it was obtained by him by misrepresentation or fraud. Indeed, the effort in this proceeding to prevent him from holding the property as exempt by enforcing the vendor's lien in effect affirms the sale of it; and, if it had been sold to him, it was his, subject to the vendor's right to enforce a lien for the purchase money. Such was the legal status of the property at the time the trustee of his estate was ap-

pointed and qualified. By the trustee's appointment and qualification, did he become vested with the title of the property? The bankrupt law (section 70a) answers that question. It says:

"The trustee of the estate of the bankrupt, upon his appointment and qualification, * * * shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt."

What property is exempt to the bankrupt? Chapter 3, § 6, Bankr. Law, supra, answers that. It is the same that is exempt under the state laws. What is exempt under the laws of the state? The state constitution answers that question (article 9, § 2), viz.:

"Specific articles to be selected by such resident, not exceeding in value $500.00, in addition to his or her wearing apparel, and that of his or her family."

Wells selected and claimed this very property as exempt, and it was set apart to him by the trustee as such. The title to this property did not, therefore, pass to the trustee. It never became vested in him. By the very terms of the bankrupt act the title remained in Wells, or, at least, did not pass to the trustee. It did pass to the possession of the trustee for a specific purpose,—that of preparing a complete inventory of the bankrupt's estate,—and to set apart the exemptions according to the provisions of the forty-seventh section of the act, with the estimated value of each article. Rule 17, Sup. Ct., General Orders in Bankruptcy. 18 Sup. Ct. vi. But the title to the exempted property did not change.

In re Bass, 3 Woods, 382, Fed. Cas. No. 1,091, referred to in 1 Am. Bankr. R. 165, 91 Fed. 745, in the case of In re Camp, Mr. Justice Bradley used this language:

"In other words, it is made as clear as anything can be that such exempted property constitutes no part of the assets in bankruptcy. The agreement of the bankrupt in any particular case to waive the right to the exemption makes no difference. He may owe other debts in regard to which no such agreement has been made. But, whether so or not, it is not for the bankrupt court to inquire. The exemption is created by the state law, and the assignee acquires no title to the exempt property. If the creditor has a claim against it, he may prosecute that claim in a court which has jurisdiction over the property, which the bankrupt court has not. Nor does it make any difference that the homestead was not ascertained or set out in severalty until after the proceedings in bankruptcy were commenced, or until after the conveyance to the assignee was executed. Whenever properly claimed and designated, the exemption protects it; and the exemption created by the bankrupt act relates back to the conveyance, and limits its operation. Though not designated when the conveyance was executed, it was capable of being designated; and on the principle that 'id certum est quod certum reddi potest' it is as much entitled to the benefit of the exemption as if it had been designated and set apart before the bankruptcy occurred. And here it is proper to remark that the assignee in this case misconceived his duty and powers when he assumed to judge that the bankrupt was not entitled to a homestead. That is for the court to say, and not for him. It was his business to report to the court whether the property claimed as homestead was or was not within the limit of value which the laws of Georgia allow for that purpose. Unless the court had this information, it cannot determine whether the property claimed is fairly within the allowance for homestead or not, and whether it has jurisdiction over the property or not. What equities might arise if there were several creditors, and some of them had a lien or claim against the homestead property and the others not, it is not necessary to decide. Those who

have no such claim might, perhaps, properly object to those having such a claim being allowed to come in for a dividend against the general assets until they had first exhausted their remedy against the exempted property, on the principle of marshaling assets. This would depend on the question whether the equity of the general creditors is superior to that of the bankrupt and his family in reference to the right of homestead and exemption. In some cases, at least, the equities might, perhaps, be equal, in which case the court would not require the assets to be marshaled. But, even where the right to marshaling existed, the bankrupt court could not assume jurisdiction of the exempted property, and order it to be sold, but would require the favored creditor to pursue his remedy against such property in a forum that could lawfully reach it. The decree of the district judge is affirmed, with costs."

To the same effect see Rix v. Bank, 2 Dill. 367, Fed. Cas. No. 11,869; In re Poleman, 5 Biss. 526, Fed. Cas. No. 11,247; Byrd v. Harrold, 18 N. B. R. 437, Fed. Cas. No. 2,269; In re Stevens, 5 N. B. R. 298, Fed. Cas. No. 13,392; In re Preston, 6 N. B. R. 545, Fed. Cas. No. 11,394.

In view of this decision, and having regard to the very language of the bankrupt act as quoted, supra, I cannot doubt that the title to this property remained in the bankrupt, and that he had the right in law to claim it as exempt. I am equally clear that the bankrupt court is not the proper forum to enforce the vendor's lien against it. Rix v. Bank, 2 Dill. 367, Fed. Cas. No. 11,869; In re Poleman, 19 Fed. Cas. 918 (No. 11,247). I am aware that two district judges—Spere and Paul—have held in cases where creditors of the bankrupt held his notes waiving exemptions that the bankrupt courts had jurisdiction to enforce such a note against the bankrupt's exempted property. In re Sisler, 2 Am. Bankr. R. 760, 96 Fed. 402; In re Woodruff, 2 Am. Bankr. R. 678, 96 Fed. 317. Whether those opinions are sound or not it is not necessary to decide. Those cases are easily distinguished. In those cases, in so far as the creditors holding the notes waiving all exemptions were concerned, it may be said that all the estate of the bankrupt passed to the trustee, for the supreme court of Georgia had held that the waiver of exemptions in a note was valid and binding; so that, under the laws of Georgia, as to these creditors, nothing was exempt. In the case at bar there is no waiver of exemptions. On the contrary, the absolute title to the property in controversy was in Wells, the bankrupt; and, if he had not claimed it as exempt, it would have passed to the trustee for the benefit of all the creditors, for the reason that such property as passes to the trustee is for the benefit of all, subject, of course, to any valid liens. It has been held by the supreme court of Arkansas that property assigned for the benefit of creditors was not subject to the vendor's lien for the purchase money. Moreover, it has been held that the statute quoted supra, and intended to make effective the constitutional provision forbidding the vendee to claim as exempt property for which the purchase money had not been paid, did not give the vendor a lien at all, but only forbade exemption for the vendor's debt for the purchase price, and to enable him to seize it at the commencement of his action, if still in the possession of the vendee, or under his control. It was declared to be a statutory process for impounding the chattel to prevent alienations pendente lite; and the object of the action was not to enforce a previously existing lien,

but to create a lien by service of process upon the property. Bridgeford v. Adams, 45 Ark. 136; Swanger v. Goodwin, 49 Ark. 288, 5 S. W. 319. The vendor in this case, therefore, had no lien upon this property for the purchase money. He can only acquire it by complying with the statute. He cannot enforce it by exceptions to the trustee's report. Whether he can enforce this lien in another forum having jurisdiction is not a question I am called upon to decide. The whole equity of this case, however, is with the vendor; and, if he elects to proceed against the bankrupt to enforce the vendor's lien, the court, on application, will withhold the discharge of the bankrupt, if he be otherwise entitled thereto, until the proper tribunal may pass on the question. The exceptions are overruled, and the action of the referee is affirmed.