## In re MAYER.

(Circuit Court of Appeals, Seventh Circuit. May 9, 1901.)

No. 747.

1. BANKRUPTCY—ORDER DETERMINING CLAIM TO HOMESTEAD EXEMPTION—FINALITY—ABSCONDING OF BANKRUPT IN CONTEMPT.

An order made by a court of bankruptcy under the authority conferred by Bankr. Act, § 2, cl. 11, determining in general terms the location and extent of a bankrupt's homestead exemption, but committing the matter to the referee to fix its boundaries, is interlocutory, and not a final adjudication; but, even if final, it remains subject to the power of the court to set it aside during the term, and the court is justified in exercising such power where it is made to appear that the bankrupt is in contempt of an order requiring him to pay to the trustee a sum of money which he is wrongfully withholding, that he failed to include in his schedule other money and property of large amount which he fraudulently transferred, and that since the making of the order he, with his wife and family, has abandoned his residence in the alleged homestead and left the country; and upon a rehearing of the claim to the homestead exemption such acts of the bankrupt may properly be considered upon the question of his good faith in relation to such claim. Whether the bankrupt in such case has such standing in court as entitles him to be heard by counsel, or to maintain a petition for review, quære.

2. SAME—TITLE TO HOMESTEAD—ABANDONMENT AFTER ADJUDICATION.

Under the provision of Bankr. Act, § 70a, that the trustee shall be vested with the title of the bankrupt as of the date he was adjudged a bankrupt, "except in so far as it is to property which is exempt," where the location and extent of a bankrupt's homestead are uncertain and in dispute because of his excessive claim, the title to all the property may properly be treated as vesting in the trustee sub modo, subject to such exemption as shall finally be awarded and defined, and especially where, as under the laws of Wisconsin, the bankrupt had power to alienate the property by his individual conveyance, subject, in case he was married, only to a reservation of the homestead right; and where, before such award or setting aside of the homestead has been made, it is abandoned by the bankrupt and his family, the title of the trustee becomes absolute for the benefit of the estate.

Jenkins, Circuit Judge, dissenting.

In Review of an Order of the District Court of the United States for the Eastern District of Wisconsin.

On August 19, 1899, Charles Mayer was duly adjudged an involuntary bankrupt, and ten days later filed in the proceeding a schedule, in which he claimed the exemption of certain real estate, on which were a double brick building and a frame dwelling, as a homestead under the laws of Wisconsin. This claim the trustee declined to allow, and the referee, being in doubt "whether the bankrupt is entitled to claim the entire property as exempt, or whether the dwelling house alone should be set apart to him as exempt, or whether the north half of the building which he now occupies should be alone set apart to him as his homestead," on November 17, 1899, certified the question, with the evidence taken and his findings thereon, to the judge of the court for determination, and upon consideration thereof the judge, on

February 8, 1900, handed down an opinion, in pursuance of which on the same day an order was entered "that the north half. of the flat claimed by the bankrupt as exempt be so set apart as the homestead of the bankrupt pursuant to the opinion of the court this, day filed." From that opinion we quote the following:

"In June, 1899, a few weeks prior to the commencement of the involuntary proceedings in bankruptcy, the lower north flat being vacated by its tenant, the bankrupt and his wife moved into and have since occupied that portion, the frame building being occupied by his brother and son, who were constant members of the family, and further used for storage purposes. The bankrupt testifies in substance that he built the flats with intention to occupy them as a homestead, that he moved in pursuance to such purpose, and further intended to open an entrance through the party wall between the north and south flats; also, that he never abandoned the frame building as a homestead, and now claims the same as part thereof. The question certified presents the following phases: (1) Whether exemption can be applied to the whole lot, and, if not, whether it must be set apart (2) in the frame dwelling house alone, (3) in the double flat building as a whole, or (4) in the north half only. Decisions of the supreme court of the state are controlling in the solution of these inquiries, and I am of opinion that they cover each phase to such extent, at least, that no aid can be derived from the cases cited by counsel from other jurisdictions. My conclusions are: (1) On the authority of Casselman v. Packard, 16 Wis. 114, 82 Am. Dec. 710, Jarvais v. Moe, 38 Wis. 440, and Schoffen v. Landauer, 60 Wis. 334, 19 N. W. 95, it is clear that the exemption cannot embrace more than one dwelling house and so much of the lot as is separately used therewith within the quarter acre, and that buildings not occupied in that connection, with the appurtenant land, are excluded, although both buildings are within the quarter-acre limit. (2) The only difficulty in disposing of the contention of the trustee that the frame dwelling should be set apart for homestead arises out of the rapacious claim of the bankrupt that he retained its use as such while entering into occupancy of the new building for like purpose." The following cases are also cited and commented upon: Palmer v. Hawes, 80 Wis. 474, 50 N. W. 341; In re Lammer, 7 Biss. 269, Fed. Cas. No. 8,031; Phelps v. Rooney, 9 Wis. 70, 76 Am. Dec. 244; Harriman v. Insurance Co., 49 Wis. 71, 5 N. W. 12. And the opinion concludes in this wise: "But the south half is clearly made a distinct structure on the center line of the party wall extended to the rear of the unoccupied portion of the lot, and cannot be included in the exemption. It is therefore certified to the referee that the homestead be so set apart in the north half of the flat upon the center line so extended."

On January 20, 1900, the referee had made an order requiring the bankrupt to pay to the trustee the sum of $3,599.02, and for disobedience thereof had adjudged him guilty of contempt of court; and the court, on February 6th, having affirmed that order on review, and having directed the marshal to commit the bankrupt to jail and hold him until he had obeyed the order, he left the country. Thereupon the trustee, instead of executing the order to set apart the homestead, on March 17, 1900, filed his petition, setting forth the facts stated and alleging besides that the bankrupt had not scheduled all his property, but in addition to the real estate claimed as exempt had in his own control or in the possession of his wife and brother-in-law, who held for his use, moneys and property to the amount of thirty thousand dollars and more, and that, upon the commencement of an action in the circuit court of Milwaukee county against the bankrupt and his wife to obtain a discovery and to recover sums fraudulently transferred, the wife had left the state and had gone to join her husband in some unknown place outside of the United States; recommending that the claim for a homestead exemption be dismissed, because, being in contempt of the court, the bankrupt had no standing in court, and because he and his wife "have actually removed and have abandoned the property herein described, and the whole thereof, without any certain and abiding intention of returning to the same as a home or place of abode" (see Moore v. Smead, 89 Wis. 558, 62 N. W. 426); and, after a statement (manifestly referring to the order of February 8th) that for the reason set forth he had refused to set apart any portion of the property to

the bankrupt as a homestead, and claimed title to the whole of the property free of all right or claim of exemption, concluding with a prayer for an order upon the bankrupt to appear and show cause, if any, why his claim to exemption in the property ought not to be disallowed, and why the trustee should not be authorized to take possession and dispose of the property as part of the bankrupt estate. This petition was verified by one of the attorneys for the trustee, and was supported by affidavits of the marshal of the district and of a deputy sheriff. The attorneys for the bankrupt filed an answer, denying abandonment of the homestead, and denying the right of the trustee to "assert title to the said property or any part thereof." A hearing was had before the referee, who, upon findings to the effect that, having been adjudged in contempt of court, the bankrupt had fled the country "with no certain or abiding intention of returning thereto, and left with the intent and design to take up his residence outside of the state of Wisconsin," and that in March following his wife and children had gone out of the United States to join him, adjudged and decreed "that the bankrupt had lost and abandoned any and all right to the homestead provided by the laws of Wisconsin, and that the trustee in bankruptcy is vested with full and complete title to the premises heretofore claimed by the said Charles. Mayer," etc. This order, on a petition for review, the district court approved and made an order of the court, and on the record so made is based the petition to this court intended to present questions of law stated as follows: (1) Does the title to property exempt by the laws of the state of Wisconsin to a bankrupt as a homestead, and which is owned and occupied by the bankrupt as his homestead at the time of his adjudication as such, and which property is subsequently, in the bankruptcy proceedings, determined to be such homestead, upon being abandoned as a homestead by the bankrupt after such adjudication of bankruptcy, pass to the trustee and become property which he may administer as a part of the bankrupt estate? (2) Has the court of bankruptcy, after such adjudication of bankruptcy and determination as to the property constituting such homestead, any jurisdiction of the same? The trustee has moved to dismiss the petition, chiefly upon the ground that the bankrupt, at the time of making the order complained of, was and still is in contempt of the bankruptcy court, is a fugitive from justice, and therefore should not be permitted to ask of this court a review of the order.

The statutes of Wisconsin contain the following provisions touching the homestead right. Section 2983 (2 Sanb. & B. Ann. St. 1898, p. 2091) provides: "A homestead, to be selected by the owner thereof, * * * owned and occupied by any resident of this state, shall be exempt from seizure or sale on execution, from the lien of every judgment and from liability in any form for the debts of such owner, * * * and such exemption shall not be impaired by temporary removal with the intention to reoccupy the same as a homestead, nor by a sale thereof, but shall extend to the proceeds derived from such sale while held with the intention to procure another homestead therewith, for a period not exceeding two years." Section 2203 of the same revision (volume 1, p. 1602) provides that "no mortgage or other alienation by a married man of a homestead exempt by law from execution shall be valid or of any effect as to such homestead without the signature of his wife to the same." Section 2271 of the same revision (volume 1, p. 1641) provides "that in case of the death, intestate, of the owner of a homestead it shall descend (1) free of all judgments and claims against the deceased owner or his estate, except mortgages, laborers' and mechanics' liens, to his widow, failing lawful issue; (2) in case of issue, to his widow during her widowhood, and upon her marriage or death, to his heirs; (3) in case of issue but no widow, to such issue; (4) if he shall leave neither issue nor widow, then it shall go according to the law of descent of the state, but in that event the homestead shall be subject to the debts and liabilities of the deceased owner." Other facts are stated in the opinion.

Thomas H. Dorr, for petitioner.
Jackson B. Kemper, for respondent.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

It is not clear that the motion to dismiss the petition because the petitioner is in contempt of the district court should not be sustained. The question is whether an adjudged bankrupt shall be heard to assert a claim for a homestead, of undetermined location or dimensions, while in contempt of an order of the court requiring him to pay to the trustee a sum of money which he is wrongfully withholding, and when it appears that he had not included in his schedule other moneys and property to a large amount, but had made fraudulent transfers thereof, and with his wife and family had abandoned their residence in the alleged homestead and had left the country.

The last clause of section 47 of the bankruptcy act makes it the duty of trustees to "set apart the bankrupt's exemptions and report the items and estimated value thereof to the court, as soon as practicable after their appraisement"; and by section 2 of the act the courts of bankruptcy are given jurisdiction to "determine all claims of bankrupts to their exemptions." By section 6 the exemptions allowable are those prescribed by the state laws in force at the time of filing the petition in the state wherein the bankrupt has had the required domicile. In this instance the trustee refused to recognize the homestead right claimed, and the proceedings detailed in the statement of facts followed. While the last proceeding before the referee was treated by him as being "in the matter of the petition of Oliver C. Fuller, trustee, to take possession of and to quiet title to premises claimed as a homestead," it was evidently not an independent proceeding, to which in any proper sense the bankrupt should be regarded as standing in the attitude of a defendant. It was, in fact, a part of the proceeding instituted by himself when he inserted in his schedule the claim for a homestead exemption. Before the referee and before the district court his position was essentially that of a claimant or petitioner asserting a right, which the trustee, representing the estate, denied; and the order of February 8th did not change the relation of the parties to the question or to the proceedings. That order, it would seem, was interlocutory only. It did not in terms define the extent or boundaries of the homestead to be set apart. If it had, there would have been no need for further action on the part of the referee or trustee; but that such further action was contemplated, and in fact was necessary, the opinion and order of the court read together leave no room to doubt. There is nothing in the opinion fixing the point to which the dividing line between the north and south halves of the premises should be extended except the words "to the rear of the unoccupied portion of the lot," and, the frame dwelling house being on the west end of the lot, it was yet to be determined how much of the intervening space was or should be deemed to be appurtenant to or occupied by that house. The opinion of the court quite appropriately directed that its order be certified to the referee, in response to whose certified question the ruling was made, to the end, it is clear, that under the referee's order, conforming, of course, to the order of the court, the trustee, on whom

alone the statute imposes such duty, should proceed to set apart the homestead as directed. If, however, the order should be regarded as final in its character, it was nevertheless subject to be set aside, either expressly or by implication from an inconsistent order of the court, whether acting upon its own motion or at the instance of a party, so long, at least, as the term of court at which it was entered had not gone by, as it had nor when the petition of the trustee was filed; and with knowledge of the facts thereby brought to its attention the court would have been grossly derelict if it had allowed the order to stand.

When the homestead right is uncertain and so complicated with other property that the court must be asked to establish and define it, and it is made to appear, while the matter is under consideration or has not passed beyond the control of the court, that the bankrupt is withholding and concealing other property which ought to have been scheduled and turned over to the trustee, and is evading an order of the court requiring him to pay over a specified sum, is it to be said that the court may not pause, but must proceed to determine as an independent matter the question of the bankrupt's right to a homestead, even though it be apparent that he is withholding fraudulently money and property probably of greater value than the property claimed to be exempt? Under the Wisconsin statute the price of a homestead may be held as exempt for two years, if it be done for the purpose of purchasing therewith another homestead. If in such case there should be an adjudication of bankruptcy, and the trustee should obtain possession of money which the bankrupt claimed and was entitled to claim as exempt because of its being the proceeds of the sale of a homestead, ought the court, without inquiry into the facts, to order the trustee to surrender the money, notwithstanding the bankrupt, in willful disobedience of an order of the court, is alleged to be withholding and concealing other money and property to which the trustee is justly entitled? The question ought to answer itself (Pratt v. Burr [C. C.] 19 Fed. Cas. 1248), and there is no good reason for saying that a homestead unsold is any more sacred than the price of it when held for reinvestment in another refuge for the family. If in this case no one but the bankrupt himself were concerned, there could be no injustice in dismissing his petition to this court because of his contempt of the orders of the district court; and the fact that he has a wife and children does not seem to affect the legal aspect of the proposition. During the life of the husband, in whom is the title, the wife has by virtue of the homestead laws of Wisconsin no vested interest in the home, but simply control over the husband's right to convey or mortgage it, and even with that power she cannot hinder a change of domicile, upon which, the homestead right ceasing, the husband's disability to convey or mortgage the land will also cease, except that, irrespective of the law of homestead, a conveyance without her signature and acknowledgment will be subject to her inchoate right of dower. It was so declared in Godfrey v. Thornton, 46 Wis. 677, 683, 1 N. W. 362. We, however, are not called upon now to consider what would be the effect if a wife, refusing to follow her hus-

band in a change of domicile, should continue to reside in the homestead.

The court below, therefore, would have been justified in striking out the answer, or, at least, in refusing to hear the bankrupt's attorneys in response to the petition of the trustee, so long as he persisted in disobedience of the order to pay over money, and on that ground might well have set aside summarily the order directing the homestead to be set apart; but whether for that reason alone it would have been proper to declare the right of homestead forfeited and the trustee vested with absolute title may be questionable. With the order set aside or disregarded, the original question of the homestead right was open again for investigation; each party, unless precluded by being in contempt, having the privilege of introducing further proofs. So long as there had not been a final adjudication, or the term of court had not passed at which the adjudication was had, the bankrupt, though he had fled the country, was constructively in court and bound to take cognizance of what should be done. His absence could not deprive the court of the power to proceed to a final conclusion, though the fact and circumstances of his going and his family following him abroad afforded potent evidence that his claim for a homestead in any part of the property other than the frame dwelling, in which he had lived until shortly before the adjudication, was fraudulent in its origin, and that whatever such right he had had in the frame dwelling he had forfeited by his fraudulent attempt, in anticipation of bankruptcy, to obtain a larger holding. His attempt to include the frame dwelling in the homestead the district judge declared "rapacious." His attitude and conduct as finally revealed were consciously fraudulent and lawless. If not strictly an equity court, a bankruptcy court proceeds on equitable principles and is not bound to lend itself to the establishment of an undetermined claim for exemption, even though asserted in the sacred name of homestead, in favor of a fraudulent claimant, who stands in confessed defiance of the court and of the law under which the claim is asserted. "The homestead," said Judge Bond in Re Dillard (C. C.) 7 Fed. Cas. 703, "was a bounty to unfortunate, but honest, debtors. It was not intended for the benefit of fraudulent bankrupts." "A party," said Judge Miller in Pratt v. Burr, supra, "cannot turn that which is granted him for the comfort of himself and family into an instrument of fraud."

The case, however, is not before us on appeal to be reviewed upon its merits; and, passing the motion to dismiss, we are called upon to consider only the questions of law presented by the petition. As formulated, the questions proposed seem to be of law purely, but they include assumptions of fact not established by the record, and for that reason, perhaps, ought not to be considered. They assume the fact, which might well have been found to the contrary, that at the date of the adjudication of bankruptcy the particular property now in question was occupied by the bankrupt (in good faith) as a homestead; and, contrary to the indisputable fact, they assume that in the bankruptcy proceedings that property had been (finally and irrevocably) adjudged to be such homestead. Enough has been said

already to show that there had been no such adjudication, and that, even conceding the ultimate proposition sought to be established, that by the bankruptcy law the title to exempt property remains in the bankrupt, and in no event can go to the trustee, the final order of the court may have been made, or at least may be justified, on the ground that a homestead right in the north half of the double building had never been established, and that the homestead in the frame dwelling had been abandoned before the date of the adjudication. By his own testimony he "never abandoned the frame building as a homestead," and, that being so, he could not have acquired a homestead in the other building.  Jarvais v. Moe, supra.

But, assuming the question to be before us in proper form, is it true, by the letter of the statute, that in no case and in no sense does the title to exempt property vest in the trustee?  If so, and if there can be no escape by construction, then of this statute more than any other known to us the spirit is sacrificed to the letter.  Illustrations may readily be suggested.  When the claim is for the exemption of property which must be separated from other property of the bankrupt, until the right of exemption shall have been determined and the particular parts or parcels to be exempted designated, there can certainly be no impropriety in treating, and in order to reach just results in supposable cases it will be found necessary to treat, the title as having been sub modo in the trustee.  If, for instance, as in Re Friedrich, 40 C. C. A. 378, 100 Fed. 284, the property consists of a stock of goods in trade, in which there is a disputed or a conceded right of exemption to a certain amount in value, is it not clear that the title to the entire stock must be deemed to pass to the trustee, subject to the claim for exemption, and that, when afterwards the exemption shall be allowed in specific articles, the title of the trustee to those articles will cease and to the other articles become absolute, and by relation be considered to have been such from the date of the adjudication of bankruptcy?  In all such cases, whether the property be personal or real, the claim for exemption, until determined and defined by the trustee or by the court, is not a title to specific property or articles, but is rather a limitation or charge imposed by the statute upon the title of the trustee.  This view certainly may well be applied to a claim for a homestead right which has not been determined by the judgment of a competent court, and which is asserted over more property than can be included in it.  Just what part, if any, of the property claimed in this instance should have been apportioned and set off as a homestead, whether one part or another, or the whole, was matter for the court to determine, and, until that had been finally settled, it was not and could not be known what part should be exempted and what part should go (by relation had gone) absolutely to the trustee.  After the entry of the order of February 8th it was in the power of the court, on motion or sua sponte, to change the order, so as to exempt the south instead of the north half of the double building, or the frame building instead of either; and, if that had been done, what then should be said of the title, either of the bankrupt or the trustee?  That it shifted with the changing orders?  Or, rather, that from the date of the adjudication the trustee held title

to the entire property, subject to such exemption as finally should be awarded? During the ten days from the adjudication to the filing of the schedule, in which the exemption was first asserted, where was the title? If during that time the bankrupt had died intestate and without widow and issue, the homestead would have gone "according to the law of descent" in Wisconsin, but subject to the debts and liabilities of the deceased; and yet, if the title was in no sense in the trustee, he would have been powerless to deal with the property, and if he had proceeded to dispose of the entire property of which the homestead was a part, and to use the proceeds in discharge of the debts of the bankrupt, the sale of the homestead, it would seem, must have been subject, at any time within the statute of limitations, to be set aside as invalid or void at the suit of those entitled thereto by law. Or suppose, again, that a bankrupt, having an undisputed right of exemption in a homestead, should not assert the right, and pending the proceedings should abandon the property as a residence, either with or without a purpose that the trustee should take possession and dispose of the property as a part of the bankrupt estate. What, on either supposition, would be the trustee's right in or power over the property? Again, let it be supposed that Mayer had sold the entire property which he claimed as a homestead, and at the date of the adjudication had had the money received therefor on deposit. For as much as two years the right of exemption would have extended to the proceeds of the homestead, if "held with the intention to procure another homestead therewith." To determine, upon that supposition, the right of the bankrupt to claim a part or the whole of the deposit as exempt would have involved determining—First, whether there was a homestead right in the property before the sale; second, what part (if only a part) of the entire price had been received for or was fairly attributable to the homestead right; and, finally, whether to the extent derived from the homestead the deposit had been held with the intention of procuring therewith another homestead. Until those questions had been solved in whom would have been the title to the deposit? And if for the purpose of greater safety or for any reason it had become desirable or necessary to withdraw the deposit, by whom could the withdrawal have been effected? Certainly not by the bankrupt, and if not by the trustee, then only by the consent of both parties, unless upon an order of court, certain to be too late for supposable emergencies. All such difficulties will disappear before the proposition, if conceded just as it is expressed in the seventieth section of the statute:

"The trustee * * * and his successor or successors * * * shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it (the title) is to property which is exempt, to all (1) documents relating to his property; * * * (5) property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

In Wisconsin a man may have a homestead, though he be without wife or child, and in such case, of course, may convey or otherwise dispose of the property at will. If he has a wife, he may convey the homestead, if the deed be signed, though not acknowledged, by her;

and, as already stated, he may, by changing his domicile, acquire the uncontrolled power to mortgage or convey the property without the wife's consent, subject only to her inchoate right of dower (Godfrey v. Thornton, supra); and a conveyance of a homestead without the wife's signature, in which was reserved to the grantor "the sole, free, and absolute use and control" of the property "so long as he and his wife, or either of them, may live," has been declared valid, though without such reservation the conveyance would have been void. This was the ruling in Ferguson v. Mason, 60 Wis. 377, 19 N. W. 420; one of the judges, however, being of opinion (and it was so held in Pratt v. Burr, supra) that such conveyance, though without reservation, would be void only in so far as it purported to cover the homestead right. See, also, Moore v. Smead, 89 Wis. 558, 62 N. W. 426; Schoffen v. Landauer, 60 Wis. 334, 19 N. W. 95; Jarvais v. Moe, 38 Wis. 440. The bankrupt thus having power by his individual act to convey the property which he possesses as a homestead, though he have a wife, if he expressly reserves the homestead right for the benefit of both, and absolutely if he have no wife, it follows, even within the letter of the statute, that the title to such property, subject to the right of exemption,—that is to say, in so far as the property is not exempt,—passes to the trustee, and is vested in him by operation of law, subject (if there be a wife) to the same reservation, supplied by legal intendment, which in a conveyance by the owner must have been expressed.

In Re Woodruff (D. C.) 96 Fed. 317, it was held that the bankruptcy court had jurisdiction to enforce, against property set apart by the trustee to the bankrupt as exempt under the laws of the state, the rights of creditors who hold notes or other obligations of the bankrupt waiving exemptions, though the obligations had not been reduced to judgment and did not otherwise constitute a specific lien upon the property; and in Re Sisler (D. C.) 96 Fed. 402, a like ruling was made. Both cases proceed on the theory of title in the trustee, though for the benefit of some only of the creditors. In the first, after distinguishing the opinion of Justice Bradley in Re Bass (C. C.) 2 Fed. Cas. 1004, the judge, in respect to the powers of the bankruptcy court and the spirit in which the statute is to be construed, said:

"The court of bankruptcy, as we have seen, is now given the express power 'to determine all claims of bankrupts to their exemptions.' Now, what does this language import? If the court has the power to determine that the bankrupt is entitled to his exemption as against the creditors, it certainly has the correlative power to determine the right of the creditor to attack the exemption upon any legal ground. This language is not a limitation upon the power of the court, to be strictly construed, but it is a grant of jurisdiction, which must be beneficially construed to carry out its purpose. The language must have a reasonable construction, and with the express grant of power to determine all claims of the bankrupt to his exemption there seems clearly to go the power to determine that the bankrupt has no claim to exemption in favor of particular creditors, because under the constitution of this state as to them he has solemnly renounced and waived it."

See, also, In re Wells (D. C.) 105 Fed. 762.

It was held by the court of appeals in the Ninth circuit, in Re Scheldt (C. C. A.) 104 Fed. 870, contrary to the decision of the court

of appeals for the Eighth circuit in Steele v. Buel (C. C. A.) 104 Fed. 968, that under clause 5 of section 70a, insurance policies, though exempt by the laws of the state from execution, vest in the trustee; and under either decision such policies, if not exempt by the state laws from execution, pass to the trustee as assets, subject to the option of the bankrupt to pay or secure to the trustee the surrender value when ascertained.

The intention of this statute is, without doubt, that the creditors shall have all the estate of a bankrupt which is not exempt, and that the bankrupt shall have the exemptions allowed by the law of his domicile, determined by relation to the date of adjudication, "separating the past and the future"; but it does not follow, and may not reasonably be said to have been the intention of the statute, that a bankrupt, while concealing or withholding property or money which the law requires him to surrender to the trustee, may insist that the latter shall surrender to him other moneys or like property which the same law permits him to claim as exempt. Ordinarily and in a direct sense it is true, also, that "all after-acquired property goes to the bankrupt and with that the trustee has nothing to do"; but, again, it does not follow that with such property or its proceeds a bankrupt may not be compelled, at the end of an execution or otherwise, to make good to the trustee whatever of property or money he had failed to schedule and turn over. Neither in excuse nor mitigation of his disobedience of the court's order would Mayer have been permitted to show, if he could, that before notice of the motion to show cause he had expended or lost the particular money ordered to be paid over, and was for that reason unable to pay it except with after-acquired means. The statute certainly does not require or permit that upon such a plea he should be acquitted of contempt or relieved of the order of commitment. The rights and duties created by the statute, in some measure at least, must be correlative.

Cases which arose under the act of 1867 can have little bearing. That act required a conveyance by the register to the assignee of "all the estate, real and personal, of the bankrupt," but, besides providing that there should be excepted from the conveyance the exemptions allowed by the laws of the state in which the bankrupt had his domicile, contained the further provision that "in no case shall the property hereby excepted pass to the assignee or the title of the bankrupt thereto be impaired or affected by any of the provisions of this act." This language is perhaps too explicit to admit of construction, and yet cases are supposable in which it would have been impossible to say that under that act the title to real estate in which the bankrupt had a homestead did not vest in the assignee. An illustration is afforded by the case of Cox v. Wilder, 2 Dill. 45, 6 Fed. Cas. 684, where it appears that by the law of Missouri the head of a family was allowed exemption from execution in "any of his or her real estate, not exceeding (one hundred and sixty acres in farming land or one lot in a town or city) in value one thousand dollars at the date of such exemption, to be held and enjoyed by such party as a homestead"; and it was further provided that where the real estate

so owned was of greater value than the amount allowed to be exempted as a homestead, and was not susceptible of division, the entire property might be sold on execution, the officer paying over to the defendant in the execution the amount of the exemption. Similar cases arising under the laws of Vermont and Georgia, respectively, are to be found in Re Beede (D. C.) 3 Fed. Cas. 62, and in Re Brown (D. C.) 4 Fed. Cas. 334. In Re Friend (C. C.) 9 Fed. Cas. 821, the trustee wrongfully sold specific articles of property which the bankrupt had claimed as exempt, and Justice Bradley, instead of treating the sale as void, held the bankrupt entitled to the proceeds of the sale; and in Re Jones (C. C.) 13 Fed. Cas. 931, Judge Dillon held that a right of exemption, denied by the assignee, might be enforced against the proceeds of sale in the hands of the court. These rulings necessarily imply the power of the assignee, under the act of 1867, to sell exempt property and give a good title thereto, if the bankrupt consents to look to the proceeds, and this likewise implies that the bankrupt under that act could waive the exemption in favor of the assignee, claiming the proceeds of the sale of the property or not as he should choose; and that (under the act of 1841) there might be such a waiver even of a homestead right under the law of Wisconsin was held by Judge Miller in Pratt v. Burr, supra. In Re Watson (D. C.) 29 Fed. Cas. 421, upon objection being made that the real estate set off by the assignee to the bankrupt as a homestead was of greater value than the amount limited by law, the court ordered a sale of the property subject to the rights of the bankrupt in the proceeds, if a sale could be made for more than the lawful exemption In Re Kean (D. C.) 14 Fed. Cas. 157, it was held that a discharged bankrupt could not be allowed to claim a further exemption; and this, again, carries the implication that the property, which before his discharge he might lawfully have claimed as exempt, went under the act of 1867 to the trustee to be disposed of for the benefit of creditors. In other words, the failure to claim the exemption before discharge was a waiver, which inured directly to the benefit of creditors; and if a right of exemption may be waived voluntarily, then why not by an act of fraud inconsistent with the right?

These decisions demonstrate the practical impossibility of denying to the assignee or trustee the power in frequent cases to sell and to transfer the title to exempt property, and it is therefore a fair inference that in the framing of the present act there was an intentional omission of the provision, so industriously reiterated in the act of 1867, that "in no case" should exempt property pass to the trustee. The language of the act of 1898 is not so explicit and clear as to forbid construction. The trustee is vested by operation of law with the title of the bankrupt, "except in so far as it is to property which is exempt." It certainly does no violence to this expression to treat it as meaning that the trustee is clothed with title to the property of the bankrupt in so far as the property is not exempt; and, the supreme court of Wisconsin having decided that the owner of real estate held as a homestead, though he have a wife, may convey the fee of the land if he reserves the homestead right for himself and wife, our holding in this case, that the title passed sub modo to

108 F.—39

the trustee, is in literal accord with the fifth clause of section 70a, even though treated as limited by the words, "except in so far as it is to property which is exempt." Of course, the title vested in the trustee, whatever it be, must always be subjected to such exemption as the court shall finally determine in favor of the bankrupt, his widow and children, or his grantee, if pending the determination he should convey the homestead right to another; but if, as in this case, while the matter is undetermined, or is yet within the power of the court, the bankrupt and his wife abandon the property as a residence, without having transferred the homestead right to another (who can assert the rights of a good-faith purchaser), our conclusion is that the abandonment inures directly to the benefit of the creditors, and that, as if the claim of exemption had never been made, or had never had true foundation, the title of the trustee becomes absolute as of the date of the adjudication of bankruptcy.

We find in the questions propounded no reason for disturbing the order entered below.

JENKINS, Circuit Judge (dissenting). The motion to dismiss needs little comment, since the majority opinion, sustaining the motion arguendo, declines to pursue the reasoning to its logical conclusion and proceeds to the discussion of the merits. It may not be amiss, however, to say this much: The decree of February 8, 1900, adjudged that the north half of the flat be set apart as the homestead of the bankrupt. The opinion of the court, filed with that decree, designates the homestead as the north half of the flat "upon the center line of the party wall extended to the rear of the unoccupied portion of the lot." If this decree be not self-executing, no duty in respect thereof devolved upon the trustee. If the statute imposed upon him the duty to set apart and segregate from the estate the homestead,—a question fairly debatable,—the trustee had refused to perform that duty. The court had overruled his action, and had decreed the homestead right, performing itself the duty originally, possibly, devolving upon the trustee. He had no further duty in the premises. The decree is positive and final, and not less final because the length of the north and south lines is not stated. "That is certain which may be made certain." The ascertainment of the lines, if essential, was for the court, and not for the trustee, and by the opinion filed with the decree was referred, if to any one, to the referee, not to the trustee. The petition by the trustee of March 16, 1900, was, therefore, not one in excuse of nonperformance of the decree of February 8, 1900, but was at most a petition in the nature of a bill of review. The decree has not been appealed from or set aside. The petition contains no reference to it and seeks not to impeach its correctness. The petition would seem to have been prepared either in forgetfulness of or ignoring the decree. It treats the claim for a homestead as unadjudicated, and charges that it should be dismissed, because (1) the bankrupt stood in contempt of the court with respect to other matters, and (2) he had abandoned the homestead some six months after the adjudication of bankruptcy, and prays that the bankrupt, then beyond seas, should be cited to

show cause why his claim for exemption should not be disallowed and the trustee be authorized to take possession of the premises free and clear of homestead right or exemption claim, and to administer the same as part of the bankrupt estate. If it may be assumed that the petition, without mention of it or reference to it, sought to annul the decree of February 8, 1900, for matters occurring subsequently thereto, it must be regarded in the nature of a bill of review. It challenged the adjudicated right to the homestead because only of matters occurring subsequently to the decree. To that proceeding the bankrupt was surely a defendant and was not therein an actor. It is true that to avoid arrest and punishment for contempt of the court he had fled the jurisdiction; but he was not therefore an outlaw, and while he would not be indulged in an application for favor, he is not to be denied the right to defend himself in person or property when summoned thereto. It shocks the moral sense to say that under such circumstances the court may regard him as constructively present for the purposes of jurisdiction and may then rightfully deny him a hearing and proceed to adjudicate his rights without a hearing. That would not be due process of law, the fundamental principle of which is the right of every man to be heard in his own defense. Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215. The petition of the bankrupt to this court for a review of the order complained of is matter of right, not of discretion or of bounty, and is merely a continuation and review of the proceedings instituted by the trustee against the bankrupt.

Passing, however, to the merits: By the law of Wisconsin the owner of a homestead, without limitation of value, has an absolute estate therein with power of alienation, limited only, in the interest of the wife, so that he cannot dispossess himself of the right of occupancy unless she join in the execution of the conveyance. There is also attached to that estate a privilege of exemption from pursuit by creditors so long as the property remains a homestead. At the death of the owner intestate the homestead descends to his widow or children beyond reach of his creditors, although after his death it be abandoned as a homestead. The estate has all the incidents of a freehold except the restriction upon the power of alienation in the interest of the wife. The superadded privilege of exemption would not seem to lessen the character of the estate. Does the title to such homestead pass to the trustee in bankruptcy? An answer to this question must be found in the bankruptcy act, for from that act alone the trustee derives his title to the bankrupt estate. He has such powers and rights of property as are therein conferred and no other. The act contemplates that the bankrupt shall be entitled to the exemptions allowed by the state of his domicile. Section 6 provides that the act shall not affect the allowance to bankrupts of the exemptions prescribed by the law of the state. Section 70a defines the title which shall pass to the trustee. It declares that he shall be "vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt." The act is careful to restrict the transfer of title to property which is not exempt, and in one instance

at least seems to indulge in unnecessary caution in that regard. Section 67e provides that property conveyed or incumbered with intent to defraud creditors shall remain part of the estate and pass to the trustee if "the same is not exempt from execution and liability for debts by the law of his domicile." It is difficult to understand that property exempt from execution could be conveyed or incumbered in fraud of creditors. The unnecessary caution, however, emphasizes the design to exclude all exempt property from the operation of law which vests title in the trustee. If, as held by the majority of the court, the title to a homestead passes to a trustee, it must be under the first clause of the fifth subdivision of section 70a as property which the bankrupt could have transferred; but that clause is necessarily limited and restricted by the exception which applies to every subdivision of the section, "except in so far as it is to property which is exempt." Such construction accords with the canon for the reading of statutes and is supported by the ruling of the circuit court of appeals for the Eighth circuit in Steele v. Buel, 104 Fed. 968.

The design of the lawmaker is clear that the title to the homestead, which by the state law is exempted from sale under judicial process, shall not pass to the trustee but shall remain in the bankrupt. The statute is plain; its language explicit. There is no room for construction. It is its own best expositor. This manifest design is not weakened by the provision of section 2, cl. 11, that the courts of bankruptcy shall have jurisdiction to "determine all claims of bankrupts to their exemptions." The bankrupt is required by section 7, cl. 8, to file a schedule of his property and "a claim for such exemptions as he may be entitled to." The right to a homestead may be challenged. The claim therefor may embrace more land than allowed by the state law. Undoubtedly the bankruptcy court is given jurisdiction—which before the act was lodged in all courts of general jurisdiction—to determine, if there be dispute, the right to and the extent and dimensions of the homestead. It was never deemed necessary to the determination of that question before the bankruptcy act, nor is it now necessary, that there should be an ad interim shifting of title. Upon determination of the question the court formally sets apart to the debtor and segregates from the estate that which the state law exempts. The bankruptcy court does not grant the exemption. It merely defines that upon which the law operates to exempt. The right is derived from the statute, and, as to the property found to be in fact exempt, the bankruptcy court has jurisdiction and the jurisdiction only to sever it from the estate; the title all the while remaining in the bankrupt. We have so held in Re Friedrich, 40 C. C. A. 378, 100 Fed. 284, and are therein in accord with Steele v. Buel, supra, and In re Wells (D. C.) 105 Fed. 762. Such was also the holding of the courts under the bankruptcy law of 1867. Rix v. Bank, 2 Dill. 367, 20 Fed. Cas. 846; In re Dillard, 2 Hughes, 190, 7 Fed. Cas. 703; In re Radway, 3 Hughes, 609, 20 Fed. Cas. 154; In re Bass, 3 Woods, 382, 2 Fed. Cas. 1004; Cox v. Wilder, 2 Dill. 45, 48, 6 Fed. Cas. 684; In re Hester (D. C.) 12 Fed. Cas. 68; In re Hunt (D. C.) 12 Fed. Cas. 902.

Mr. Justice Bradley, in Re Bass, supra, sums up the whole contention in language which leaves no room for argument:

"In other words, it is made as clear as anything can be that such exempted property constitutes no part of the estate in bankruptcy. The agreement of the bankrupt in any particular case to waive the right to the exemption makes no difference. He may owe other debts in regard to which no such agreement has been made, but whether so or not it is not for the bankrupt court to inquire. The exemption is created by the state law, and the assignee acquires no title to the exempt property. If the creditor has a claim against it, he may pursue that claim in a court which has jurisdiction over the property, which the bankrupt court has not. Nor does it make any difference that the homestead was not ascertained or set out in severalty until after the proceedings in bankruptcy were commenced, or until after the conveyance to the assignee was executed. Whenever properly claimed and designated, the exemption protects it; and the exemption created by the bankrupt act relates back to the conveyance and limits its operation. Though not designated when the conveyance was executed, it was capable of being designated; and on the principle that 'id certum est quod certum reddi potest' it is as much entitled to the benefit of the exemption as if it had been designated and set apart before the bankruptcy occurred."

The former bankruptcy act ex industria stated with particularity that the exemption of the homestead from the operation of the conveyance required to be made by the bankrupt to the assignee should operate as a limitation upon the conveyance, and that in no case should the excepted property pass to the assignee or the title of the bankrupt be impaired or affected. The limitation there is no more certain and precise or more potential than the limitation of the present law, "except in so far as it is to property which is exempt."

The majority opinion suggests certain questions which it is assumed answer themselves. A reference to them may not be unprofitable. It asks, where, after adjudication and prior to the filing of the claim to the exemption, is the title to the homestead? I answer: Clearly in the bankrupt, because by the bankruptcy act the title did not pass. The title came to the bankrupt by purchase. Its exemption from pursuit by creditors is conferred by statute. The adjudication of the bankruptcy court sustaining the claim of exemption does not confer title. It has not to do with title. It had only to deal with the claim of exemption. A decree of court adjudging a man and woman to be man and wife does not perform a marriage ceremony. It is further suggested that if in the interval between the adjudication and the filing of the claim of exemption the bankrupt should die intestate without widow or issue, so that the homestead under the statute would go according to the law of descent, but subject to the debts and liabilities of the deceased, if the title was in no sense in the trustee, he would be powerless to deal with the property, and, if he had disposed of it and with the proceeds discharged the debts of the bankrupt, the sale could be set aside as invalid or void. I answer: Of course, and because the trustee never acquired and could not convey title to it. The majority opinion also inquires, if moneys exempt and moneys not exempt be mingled, in whom is the title to the exempt moneys? Clearly in him to whom they of right belong, not in him who may happen to obtain tortious or rightful possession of them. The mingling no more passes title than does the mingling of grain in a warehouse bin

with the grain of another transfer the title to that other. Each remains the owner of the aliquot part contributed by him to the common mass.

The other suggested situations are likewise easily met and resolved. The plain answer is that the trustee has no right, because he has no title. The law limits his title to property which is not exempt. The title to the exempted property remains without change with him in whom the right is vested by the law. The majority opinion would seem to hold that the title to exempt property passes upon adjudication in bankruptcy sub modo to the trustee, reverting, it may be presumed, to the bankrupt when the exemptions are established by the court, and again passing to the trustee upon a subsequent abandonment of the homestead, or else that the title to the homestead passes to the trustee upon adjudication and there abides. It is not clear which result is intended. If the former reading be correct, the logic of the opinion is that the title automatically shifts from one person to another ipso facto upon the happening of events. If the latter reading be correct, then the title to the property abides with the trustee, and all that remains to the debtor is the right of occupancy during his life. The trustee could convey that title, the purchaser becoming the owner with the right of possession upon the termination of the homestead right. But what, then, becomes of the provisions of the law that one's homestead shall descend to one's widow and issue, discharged of any claim of creditors? What, then, becomes of the right of the debtor to sell or mortgage, with the consent of his wife, the homestead premises, and to hold the proceeds for reinvestment in another home and beyond the pursuit of his creditors? The beneficent policy of the state would thereby be thwarted. Every debtor, whether honest or dishonest, by mere adjudication in bankruptcy would lose title to and control of his homestead; there remaining in him only the right of occupancy. This untoward result comes from an attempt to construe that which needs no construction,—an effort through much subtlety of reasoning to abort the plain language of the statute. The act says the title to exempt property shall not pass to the trustee. The majority opinion says that it does, and that it passes and repasses ad infinitum, shifting with events. With all respect, the majority opinion, to my thinking, indulges a game of judicial battledoor and shuttlecock, interesting, indeed, as an example of mental gymnastics, but without the sanction of reason or the warrant of law. In the course of the discussion the majority opinion suggests, interrogatively, that the bankrupt's exempt property may be held by the court to compel restoration of money fraudulently withheld by him from his creditors, and states that the question ought to answer itself. It should; but a correct answer, I fear, would fail to meet the views of my brethren. It is novel doctrine that property exempt by law from pursuit by creditors, that the debtor and his family may have a roof to shelter them, may be taken from them because the debtor has defrauded his creditors. For the wrong done by him, the law gives to creditors appropriate remedy, civil and criminal. It does not subject the homestead to the payment of debts fraudulently con-

tracted, or for property disposed of in fraud of creditors. It does not seek to punish wife and children for the dereliction of the head of the family. The visitation of the sins of the fathers upon the children may be the inexorable decree of physical law, and, possibly, an essential tenet of orthodox faith, but is not the policy of the state whose law we are considering, and which is here controlling.

Assuming, however, that the majority opinion is correct in supposing that the title to the homestead passes sub modo to the trustee until the claim for its exemption has been determined by the bankruptcy court, and then reverts to the bankrupt, the decree we are asked to review is in my judgment erroneous. The court had determined, allowed, and declared the homestead. That order, as I think, was final, and, upon the assumption in the majority opinion, caused the title thereto to revert to the bankrupt. The decree here under review in effect, although not in terms, nullifies the former decree because of the abandonment of the homestead by the bankrupt six months after the adjudication. In my opinion the bankruptcy court was without jurisdiction so to determine. The general purpose of the bankruptcy act is that the bankrupt, surrendering his estate not exempt, should be discharged from his debts then existing and should retain the property exempted and allowed to him by the law of the state of his domicile. The creditors are to have all of the estate not exempt, and must surrender all claims against the bankrupt if he shall receive his discharge. The title to the property thus reserved for the benefit of creditors is vested in the trustees as of the date he was adjudicated a bankrupt. That date is the "dead line," separating the past and the future. All that the bankrupt had on that date, except property exempt, goes to his creditors. All after-acquired property goes to the bankrupt, and with that the trustee has nothing to do. That date is the line of demarkation. The bankruptcy court has to do with the estate which through the adjudication comes to the trustee for the creditors, and with no other. The trustee can in no event pursue the after-acquired property of the bankrupt; but, failing a discharge, the creditor may pursue it in an appropriate forum, but not in the bankruptcy court. In case of discharge the creditor cannot pursue, because the debt is discharged. So here, if by reason of abandonment the homestead has become subject to debts, the creditor, failing a discharge of the bankrupt, may pursue that homestead in an appropriate forum, not in the bankruptcy court; but, a discharge being granted, he is precluded from such pursuit because the debt is canceled. At the time of this adjudication and for months thereafter the premises in question constituted the homestead of the bankrupt and his family. Its subsequent abandonment could give no title to the trustee, not only because the law restricted title to property which at the time of adjudication was not exempt, but also because, under the theory of the majority opinion, the title was revested in the bankrupt by the decree of February 8, 1900, and the court was without jurisdiction to review that decree for matters occurring subsequently to the adjudication. It is not doubted that before the act, upon abandonment of the homestead, creditors could pursue it and subject it to the pay-

ment of their debts. If they cannot now do so, it is because the bankruptcy act has tied their hands for a certain period and until determination of the question of the bankrupt's discharge.

I am constrained, with deference, to dissent from the judgment of the court.